No. 20,439.

W. O. DUNCAN *v.* THE BOARD OF COUNTY COMMISSIONERS OF ROUTT COUNTY.

(391 P. [2d] 368)

Decided April 13, 1964.

Mr. Nicholas Magill, for plaintiff in error.

Mr. Robert H. Gleason, for defendant in error.

*In Department.*

Opinion by Mr. Chief Justice McWilliams.

The central figures in the present controversy are as follows:
1. Duncan, a welder who operated a machine shop;
2. Bishop, a road supervisor of Routt County; and
3. McDermott and Stetson, each of whom was a commissioner of Routt County.

Evidence adduced upon trial revealed the following:

1. Bishop initially contacted Duncan and advised him that "the county needed a gravel screen and he [Bishop] wanted me [Duncan] to draw up a blueprint . . . and present it to the County Commissioners";

2. Duncan proceeded to prepare a blueprint for a portable gravel screen, the blueprint being of his own design though based upon very general descriptive data given him orally by Bishop to the effect that "he wanted a vibrator screen . . . that would work with a quick-way shovel" and was to "be used in all kinds of gravel pits";

3. Duncan then presented his blueprint at a meeting of the commissioners of Routt County, which meeting was attended by McDermott and Stetson;

4. Duncan conceded that at this meeting McDermott specifically asked him if the machine "would work," but that in response thereto he stated that the machine "worked in all those coal mines";

5. McDermott testified, however, that Duncan "guaranteed it to work," and that he thereupon told Duncan to go ahead and build the machine, "if it will work";

6. McDermott added that he specifically warned Duncan that "we won't accept it unless the screening plant would work" and "if you want to take that chance and go ahead, fine and dandy";

7. Stetson admitted that personally he had doubts "that the machine would hold up under steady work," but that though he "couldn't swear to a guarantee," Duncan promised categorically that the "machine would work";

8. Duncan thereafter built a gravel screen in accordance with his blueprint and then delivered the same to the county; but

9. the gravel machine never worked satisfactorily in that it "was too light to handle heavy gravel" and utterly failed to perform its intended purpose of screening and processing gravel to be used for the surfacing of highways.

Based on this factual situation Duncan brought an action sounding in contract against the Board of County Commissioners for $1,606.90, said sum representing the value of materials incorporated into the machine as well as the reasonable value of his services in the construction thereof.

The Board resisted this claim on the ground that there was both an express and implied warranty that the machine was "reasonably fit for the intended purpose" and that the machine never worked nor functioned satisfactorily. By counterclaim, the Board sought to rescind the contract and offered to return the gravel screen to Duncan.

At trial, the judge — sitting without a jury — found that:

(1) as a matter of fact Duncan "guaranteed the machine would work";

(2) there was an express warranty that the gravel screen "was reasonably adequate for its intended purpose" and further that independent of this express warranty, there was an implied warranty to the same effect; and

(3) the machine was "wholly unfit for the intended purpose."

Judgment was duly entered in favor of the Board and by writ of error Duncan now seeks reversal of the judgment dismissing his claim, contending generally that the evidence is insufficient to support the finding of either an express or implied warranty or, assuming *arguendo* that there may be evidence to support such a conclusion, the Board nonetheless waived any right to rescind the contract because of its failure to make a reasonably prompt return of the machine.

As noted above, the trial court found that Duncan "expressly warranted" that the machine was "reasonably adequate for its intended purpose" and further that, independent of the evidence which established this

express warranty, there was an implied warranty to the same effect. In our view there is evidence to support each of these findings and the judgment of the trial court should not be disturbed.

C.R.S. '53, 121-1-12, defines an express warranty as follows:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon . . . ."

■■■ 46 Am. Jur. Sales, § 313, p. 494, points out that "to constitute an express warranty the term warrant need not be used . . ., no technical set of words is required" and that an express warranty may be inferred from an affirmation of a fact or a promise by the seller which "induces the purchase and on which the buyer relies and on which the seller intended that he should so do." See also *Rudd v. Rogerson,* 133 Colo. 506, 297 P. (2d) 533.

In the instant case McDermott and Stetson both testified that Duncan specifically "guaranteed" or "promised" that the gravel screen would work satisfactorily and the effect of McDermott's testimony was that it was clearly understood by all that Duncan would get paid if, and only if, the machine functioned properly. Under such circumstances the finding of an express warranty is clearly supported by the record.

Independent of this testimony which most certainly formed the basis for an express warranty, we conclude that the facts and circumstances also established an implied warranty that the machine would do that which it was intended to do. C.R.S. '53, 121-1-15, provides as follows:

"Subject to the provisions of this article and of any statute in that behalf, there is no implied warranty or condition as to the quality of fitness for any particular

purpose of goods supplied under a contract to sell or a sale, except as follows:

(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

46 Am. Jur. Sales, § 349, p. 534, reads as follows:

" . . . However, the buyer of a machine may, either under the common law or the Uniform Sales Act, rely upon an implied warranty of fitness for the purpose indicated, where he made known to the manufacturer and seller the purpose for which the machine was desired, and trusted to the latter's skill and judgment to furnish a machine suitable for the purpose. If a manufacturer undertakes to manufacture a machine according to his own judgment and plans, which is intended by the buyer for a disclosed purpose, there is an implied warranty that the machine will be fit for such purpose . . . ."

When the evidence is viewed in the light of the foregoing we conclude that the trial court did not err in finding an implied warranty. In this regard, see also *Wallower v. Elder,* 126 Colo. 109, 247 P. (2d) 682, where a jury's determination that there was an implied warranty in the sale of used machinery was upheld.

Duncan's real argument is that there can be no operative warranty, be it express or implied, unless it be affirmatively shown that the buyer relied on the affirmation of fact or promise of the seller. With this very general proposition we are in agreement, and in our view the record indicates that there was such reliance.

77 C.J.S. Sales, § 310, p. 1143, defines "reliance" as that word is used in the field of express or implied warranties in the following manner:

"In order that an affirmation may constitute a war-

ranty, it must be received by the buyer as a statement of fact with respect to the property and be relied on as such in making the purchase, that is, the affirmation asserted as a warranty must have been operative in causing the sale and must have been understood by the buyer as being intended as part of the contract. *It need not, however, have been the sole inducement to the purchase; nor need the buyer actually have been deceived by the statement.* The reliance required is only such reliance as is necessary, in contracts generally on the engagements of the other party, and, *where a representation has entered into the contract as an intended element thereof and as a part of the consideration, the requirement that it be an inducement in order to be operative as a warranty is fully satisfied."* (Emphasis supplied.)

■ What is the evidence of "reliance"? McDermott testified that Duncan "guaranteed" that the machine would work and the overall effect of his testimony was that he not only placed reliance thereon, but point-blank informed Duncan that if the machine did not work, he [Duncan] would get no pay.

■ Stetson frankly admitted that notwithstanding Duncan's various statements he personally entertained grave doubts that the machine would actually work, but that Duncan assured all that it would work. It was on this basis that Duncan was authorized to construct the machine, and quite clearly this representation or promise did "enter into the contract as an intended element thereof and as a part of the consideration."

■ Summarizing, at the time when Duncan was first advised that the county desired a portable gravel screen, he was specifically asked whether he could construct a machine that would meet their requirements. Duncan was of the belief that he could build such a machine and he thereupon proceeded to draw a blueprint wherein the details, i.e. bearings, shaft, screen and the like, were left to his discretion. When he later presented his

blueprint of the machine to the Board there is ample evidence establishing that he assured one and all that the machine would work. Based on this assurance he was then authorized to proceed with the construction of the machine and with the express admonition that he would not get paid unless it did work. The evidence clearly demonstrates that the machine as built by Duncan did *not* work satisfactorily and did *not* perform the service for which it was intended. Under such circumstances the trial court did not err in its finding that there was both an express and implied warranty.

In conclusion, Duncan's suggestion that the Board waived any right to rescind because of undue delay and procrastination is without merit. In this connection C.R.S. '53, 121-1-69, provides, in part, that "where there is a breach of warranty by the seller, the buyer may at his election . . . rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller . . ." and further that "where the goods have been delivered to the buyer he cannot rescind the sale . . . if he fails to notify the seller within a reasonable time of the election to rescind."

In this connection the record discloses that after Duncan over a period of nearly one and one-half years had made numerous attempts to remedy the several defects in his machine, all to no avail, within a few months thereafter there was an election to rescind and an offer to return the machine. In our view under all the circumstances this offer to return and thereby rescind the sale was not unduly delayed, but on the contrary was made within a "reasonable time."

Judgment affirmed.

MR. JUSTICE MOORE and MR. JUSTICE FRANTZ concur.