**Albert J. WILL, etc., et al., Plaintiffs-Respondents,**

v.

**CARONDELET SAVINGS & LOAN ASSOCIATION, etc., Defendant-Appellant,**

**Maryland Casualty Company, Third Party Defendant-Respondent.**

**Nos. 34894, 34895.**

Missouri Court of Appeals,
St. Louis District,
Division 1.

April 16, 1974.

Trailes, Hoffmeister & Gilpin, J. L. London, Amy G. Edwards, John C. Shepherd, St. Louis, for defendant-appellant Carondelet Savings & Loan Association.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown and F. Douglas O'Leary, St. Louis, for third-party defendant-respondent, Maryland Casualty Co.

James E. Crowe, St. Louis, Ruppert & Schlueter, Clayton, for plaintiffs-respondents.

WEIER, Judge.

These consolidated cases arise out of a dispute concerning the quality of workmanship in the construction of a building for Carondelet Savings and Loan Association in 1963. Defendant Carondelet Savings and Loan Association has appealed from money judgments entered against it in favor of plaintiffs Albert J. Will and Martin Korn. Defendant Carondelet also has appealed from judgments denying it relief on its counterclaims against plaintiffs Will and Korn and on its cross claims against Will and the Maryland Casualty Company, a third-party defendant.

By written contract dated May 20, 1963, plaintiff Albert J. Will, a general contractor, agreed with defendant Carondelet to construct for it a new office building. Third-party defendant Maryland Casualty Company as surety and Albert J. Will as principal executed both a performance bond and labor and material payment bond in favor of Carondelet on the same day. Plaintiff Korn entered into a contract with plaintiff Will dated June 5, 1963, wherein Korn agreed to furnish the material and labor for the brickwork in Carondelet's new building. After the construction of the building was partially completed, a dispute arose concerning the quality of the workmanship. The president of Carondelet, Roy L. Tarter, complained to plaintiff Will about the brickwork. Although the quality of the brickwork formed Carondelet's major complaint, Carondelet was also dissatisfied with several other aspects of the construction. In addition to the dispute about the workmanship, further discord arose between defendant Carondelet and plaintiffs Will and Korn concerning the authorization of certain additional items of construction not mentioned in either the contracts or the architect's specifications. Defendant Carondelet refused to pay about "eleven or twelve thousand dollars" under the contract because it felt the quality of the workmanship was substandard.

This litigation was commenced by the filing of various separate petitions in the circuit court of St. Louis County. The first petition, filed on November 5, 1964, involved a claim of one of the subcontractors, Lorain Engineering Company, against both Will and Carondelet. Also on November 5, 1964, the general contractor, Albert J. Will, filed his claim against Carondelet for the sum of $11,653.65 plus interest. This sum included $6,598.75 for the brickwork done by the subcontractor Korn. The balance was for work done by Will and other subcontractors, including the Lorain Engineering Company. Plaintiff Korn filed his suit against Will, Maryland Casualty Company and Carondelet on December 1, 1964 for the sum of $6,598.75 plus interest. After responsive pleadings to the petitions were filed, plaintiff Will's suit was consolidated on March 2, 1965 with the suit brought by plaintiff Korn. On March 4, 1968 the Maryland Casualty Company was included as a party defendant in the consolidated suit on the motion of defendant Carondelet. On December 8, 1970, after further responsive pleadings had been filed, all suits were consolidated for trial. The trial began on November 22, 1971 in the Equity Division of the circuit court of St. Louis County. Because of failure to prosecute, the claim of Lorain Engineering Company was dismissed.

The court, after hearing the testimony of nine witnesses, and after considering numerous exhibits, entered judgment for plaintiffs Will and Korn against defendant Carondelet. Korn's judgment was for $9,924.95 which included his claim of $6,598.75 plus interest in the amount of $3,326.20. Will received $7,606.19 which included interest in the sum of $2,549.29. The court also rendered judgment in favor of both plaintiffs and third-party defendant Maryland Casualty Company on Carondelet's counterclaims and cross claims.

We first turn to defendant's contention that the court erred in refusing to admit the testimony of two expert witness-

es. These witnesses had been employed by defendant Carondelet to inspect and then give their opinion, in the case of an appraiser witness as to value and in the case of an engineer witness as to defects in the building. When each of the witnesses was called to the stand, after a few introductory questions, further testimony was objected to on the grounds that the defendant Carondelet failed to include the names of these witnesses in an answer to interrogatories, under the doctrine of Laws v. City of Wellston, 435 S.W.2d 370 (Mo.1968) holding that a party has a continuing duty to disclose the names of witnesses once an interrogatory has been filed requesting names and addresses of such persons. Carondelet contends that since the witnesses here were experts and were employed to aid in the preparation of the case, their work constituted part of the work product in preparation for trial, and being privileged, it was not required to reveal their names. The work product itself is privileged, but such witnesses may be required to respond in discovery proceedings as to what they saw, what they did, and other matters of this nature. State ex rel. Missouri Public Service Co. v. Elliott, 434 S. W.2d 532, 537[7] (Mo. banc 1968); State ex rel. Uregas Service Co. v. Adams, 364 Mo. 389, 262 S.W.2d 9, 11[2] (banc 1953). Where a party fails to disclose, in answers to interrogatories, the name of a witness, the testimony of that witness may be excluded by the trial court. Thomas v. Fitch, 435 S.W.2d 703, 707[3] (Mo.App. 1968). This contention must therefore be ruled against defendant Carondelet.

We now consider the sufficiency of the evidence to support the judgments since that appears to be the major issue the defendant sought to raise here.

The court entered its judgment in favor of plaintiffs Will and Korn and against defendant Carondelet. The court also entered its judgment against Carondelet in favor of the Maryland Casualty Company. In view of the court's findings and conclusions, objections to the sufficiency of the evidence to support these judgments could plausibly be objected to on two grounds: First, that certain "extras" not provided for under the contract between Will and Carondelet were not authorized; Second, that plaintiffs Will and Korn did not perform their work in a "good workmanlike manner".

■ One of the alleged grounds on which Carondelet based its refusal to pay the final claims of both plaintiffs Will and Korn was that those claims included items of unauthorized extra work. At the trial, the testimony concerning the authorization of extra work was in conflict, plaintiffs Will and Korn claiming that the extra work was in fact authorized, and the president of defendant Carondelet claiming that the extra work was unauthorized. Some of the exhibits received into evidence at the trial supported the testimony of plaintiffs Will and Korn. In any event, we cannot conclude that the trial court's finding that all extra work was authorized was clearly erroneous since in reviewing a court-tried case we defer to the superior opportunity of the trial court to judge the credibility of the witnesses. Rule 73.01(d), V.A.M.R.

■ As pointed out by the trial court, there is an additional reason why it could determine that the extra work was authorized. Plaintiff Will's claim of $11,653.65 owed by Carondelet for the balance due on the construction of the building included original and extra work. Moreover, this claim included the amounts due plaintiff Korn and other subcontractors. Carondelet, by its answer to interrogatories, signed by Mr. Tarter, admitted that it had not paid $12,135.21 under the original contract. Since by its own admission the amount held back by Carondelet under the original contract was greater than the amount claimed by plaintiff Will in the first place, Carondelet's justification for nonpayment on the ground that certain extra work was unauthorized is without merit.

Defendant's major claim of poor or substandard workmanship concerned the

brickwork which was done by plaintiff Korn. Defendant specifically objected to the size of the mortar joints, the color of the mortar used and the overall quality of the finished brickwork.

Testimony at the trial revealed that, based on the plans and specifications prepared by the architect for Carondelet, James Wisnewski, plaintiff Korn estimated he would need between 22 and 23 thousand bricks to complete the job. Korn, however, used some of these bricks for "extra" work that had not been mentioned in the plans and specifications. As a result, Korn had to order more bricks. The available additional bricks were the same thickness and width as the other bricks, but were approximately one-quarter inch to three-eighths of an inch shorter in length. Because they were shorter in length than the other bricks used, the size of the end mortar joints was slightly larger than the size of the mortar joints where the original brick had been used. Of the 26,800 bricks used in the construction of the building, 2,800 were the smaller-sized bricks. Had it not been for the "extra" brickwork requested, there would have been enough bricks of the original size to complete the structure.

The evidence adduced at the trial also revealed that plaintiff Korn used the type of cement for the mortar joints that was called for in the architect's plans and specifications.

As to the overall quality of the brickwork, several witnesses gave testimony at the trial. Among them were three expert witnesses, John Meyer, Bernard H. Poelker, and J. William Butcher. Testifying for plaintiff Korn, Mr. Meyer said it was his opinion that bricks in this construction job had been laid in a manner equal to bricks laid by a skilled bricklayer in the St. Louis County area. Mr. Poelker was a witness for defendant Carondelet. He testified that photographs of plaintiff Korn's brickwork did not show "good workmanlike work on the bricks". Mr. Butcher testified for third-party defendant Maryland Casualty Company. Although Mr. Butcher testified that in his opinion the workmanship involved in the bricklaying was not "good", he admitted it was an "average job" for the St. Louis County area.

In addition to the brickwork, Carondelet complained about cracks in the plaster and terrazzo floors, water seepage and color changes in the "marblecrete". There is no question that the defects Carondelet complained of existed, but Carondelet presented no evidence that these defects occurred as a result of failure to follow the architect's plans and specifications. Nor was any evidence offered by Carondelet to show that the defects occurred as a result of any negligence on the part of the general contractor or any subcontractor. Indeed, the testimony of plaintiffs Will and Korn indicated that the plans and specifications were followed.

 "When the contract is to build a specified structure, according to another's plans, of course, the contractor does not insure that such plans and specifications are sufficient to obtain the result sought, and he should be paid if he did what he agreed to do." Sandy Hites Co. v. State Highway Commission, 347 Mo. 954, 149 S. W.2d 828, 833[1] (1941). Since the assertion that the quality of workmanship was substandard was contained in defendant Carondelet's counterclaim, the burden of proof was on defendant to show that the plaintiffs either did not follow the plans and specifications or that they were negligent in performing their work according to the plans and specifications. Defendant failed to meet this burden at the trial. The trial court was certainly entitled to believe the testimony that the brickwork was at least "average" in quality and we cannot conclude from the evidence that plaintiff Korn was negligent in performing the work he contracted to do. Based upon the testimony previously mentioned, we are unable to determine that the complaints about

the brickwork were born out of the failure of Korn to follow the plans and specifications.

Carondelet made no effort to show that the other defects it complained of were the result of either negligence or failure to follow the plans and specifications by the general contractor or any subcontractor. Absent such proof, the defects in the building may well have been occasioned by insufficiencies inherent in the plans and specifications themselves, although any attempt by us to determine fault here would be purely conjectural.

The trial court had evidence upon which it could base its judgment. And since the judgment of the trial court in this case is not clearly erroneous, it is affirmed.

DOWD, C. J., and KELLY, J., concur.