Ike SHAW, Jr., Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION; Daniels Motors, Inc.; and Fontaine Truck Equipment Company, Defendants-Appellees.

No. 84CA0474.

Colorado Court of Appeals, Div. I.

May 1, 1986.

Rehearings Denied May 29, 1986.

Certiorari Denied (Shaw) Oct. 14, 1986.

388

Jack Kintzele, Paula Tyo Englander, Denver, for plaintiff-appellant.

Davis, Graham & Stubbs, Charles L. Casteel, Timothy M. Tymkovich, Denver, for defendant-appellee General Motors Corp.

Rector, Retherford, Mullen & Johnson, Neil C. Bruce, Colorado Springs, for defendant-appellee Daniels Motors, Inc.

Wood, Ris & Hames, P.C., Jeffrey Clay Ruebel, Bruce F. Fest, Denver, for defendant-appellee Fontaine Truck Equipment Co.

PIERCE, Judge.

Plaintiff, Ike Shaw, Jr., appeals from several trial court orders granting summary judgments to defendants, General Motors Corporation (GM), Daniel Motors, Inc.

(DM), and Fontaine Truck Equipment Co. (FTE), on plaintiff's claims of strict liability, negligence, and breach of implied and express warranties. We affirm in part and reverse in part.

GM manufactured the cab and chassis of a truck which was sold unchanged by DM to the City of Colorado Springs. FTE manufactured a dump bed and hoist which was sold by another equipment company to the City of Colorado Springs. The latter equipment company installed the dump bed and hoist on the GM truck and made further modifications as specified by the City so that the truck would be usable as a pothole repair truck by the City. Plaintiff, while in the City's employ, was injured when his co-worker backed the pothole repair truck over him.

Plaintiff argues the truck was defective and unreasonably dangerous to its user because of defendants' failures to warn of the necessity of installing a backup alarm, and because of defendants alleged failure to fulfill their duty in installing such a backup alarm.

The critical issues before us on appeal are whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there were no genuine issues of any material fact such that defendants were in fact entitled to a judgment as a matter of law. *See* C.R.C.P. 56(c); *Ginter v. Palmer & Co.,* 196 Colo. 203, 585 P.2d 583 (1978).

### I. Strict Liability

### A. General Motors

■ A manufacturer of component parts, such as GM here, may be held strictly liable for injuries as a result of design defects in the component when it is expected to and does reach the consumer without substantial change in condition. *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978). While it may be arguable whether GM's cab and chassis underwent "substantial change in condition" because of the modifications made by the City, other issues regarding strict liability must be considered as to GM.

■ The critical questions as concerns GM are whether the condition of the truck at the time of its delivery to DM was defective and unreasonably dangerous without a back-up alarm or unreasonably dangerous as a result of a failure to warn. *Union Supply Co., supra; see Kysor Industrial Corp. v. Frazier,* 642 P.2d 908 (Colo.1982). Based on the pleadings and other materials submitted, the truck was not in such a defective condition so as to impose strict liability upon GM.

The record here shows that the GM cab and chassis could be equipped for numerous different uses; that, at the time of assembly by GM, there was no restriction of rear vision; and that it was assembled by GM with two rear-view mirrors for visibility around most body installations. In rebuttal, plaintiff points to deposition testimony by a GM engineer who admitted that a back-up alarm system would be "desirable" given the City's use of the truck as a pothole repair truck. This testimony, however, does not show that a defective condition existed at the time of the truck's delivery to DM.

As a result, at the time that the truck left GM's control, it had no "inherent dangers" such as would expose GM to liability for failure to warn of an unreasonably dangerous condition. *See Anderson v. Heron Engineering Co.,* 198 Colo. 391, 604 P.2d 674 (1979); *Union Supply Co., supra.* Based on the record, the likelihood of an accident resulting from the GM truck in the condition in which it was delivered was not such as to require warnings. *See Kysor, supra.*

Plaintiff argues that GM should have foreseen that its truck would be transformed into a pothole filling truck which had visual impairment. Under the circumstances of this case, to require such foreseeability would be tantamount to making GM an insurer against all accidents. The principle of strict liability does not impose such absolute liability. *Kysor, supra.*

Thus, plaintiff could not have prevailed against GM on a theory of strict liability.

Accordingly, summary judgment was proper. C.R.C.P. 56(e); *Ginter, supra.*

### B.  Daniels Motors

■ The pleadings and affidavits in support of DM's motion for summary judgment show that DM is not a "manufacturer" and, therefore, cannot be strictly liable pursuant to § 13–21–402(1), C.R.S. (1985 Cum.Supp.). The record is void of specific facts set forth by plaintiff which would show that a genuine issue existed with regard to whether DM was a manufacturer. Thus, as to strict liability, summary judgment was proper in favor of DM. *See* C.R.C.P. 56(e).

### C.  Fontaine

The critical questions as to FTE are whether the dump bed and hoist were in such a condition at the time of their delivery to the equipment company as to be defective and unreasonably dangerous without a back-up alarm or unreasonably dangerous as a result of a failure to warn. *See Union Supply Co., supra; Kysor, supra.*

■ The utility of summary judgment is to enable the court, based on the intrinsic merits of the claims, to determine whether there is in actuality a real basis for relief. *Sullivan v. Davis,* 172 Colo. 490, 474 P.2d 218 (1970).

The fundamental bases for plaintiff's allegations that the dump bed and hoist are defective are that: (1) it lacked a back-up alarm and (2) FTE failed to warn that lack of a back-up alarm constituted an inherent danger. The lack of a back-up alarm cannot be considered an unreasonably dangerous or defective condition until final assembly of all components, because, until assembled, there can be no need for the back-up device.

■ Similarly, with respect to plaintiff's allegation that FTE failed to warn, considering the unlikelihood of the dump bed and hoist backing up by themselves, we conclude there is no reasonable likelihood of an accident as a result of FTE's failure to warn. The condition of FTE's product was not, therefore, defective and unreasonably dangerous without a warning. *See Kysor, supra.* Thus, liability could not attach to FTE. *See Davis v. Caterpillar Tractor Co.,* 719 P.2d 324 (Colo.App.1985). Strict liability does not equate to absolute liability. *Kysor, supra.*

Therefore, plaintiff's allegations did not provide a valid basis for relief, and summary judgment was proper in favor of FTE.

### II.  Negligence

■ Before liability can be found in a negligence action, the existence of a duty of care must be determined. This is a question of law. *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1981). Whether the law should impose a duty requires consideration of the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor. *Lannon v. Taco Bell, Inc.,* 708 P.2d 1370 (Colo.App.1985) (*cert. granted* November 4, 1985); *Iverson v. Solsbery,* 641 P.2d 314 (Colo.App.1982).

Based on these considerations, there may be a duty to install an alarm system, but it does not lie with the defendants here.

■ We rule that defendants here owed no duty to the class to which plaintiff belongs. *Cf. Lannon v. Taco Bell, supra.* GM, DM, and FTE, as manufacturers and sellers of component parts that were assembled by the City, could not properly evaluate, or likely foresee, the risks arising from not installing a specific safety feature such as a back-up alarm. The burden of guarding against the injury suffered here should appropriately be placed upon the entity that designed the final product, arranged for acquisition of all the component parts, and directed their assembly. *See Elliott v. Century Chevrolet Co.,* 597 S.W.2d 563 (Tex.Civ.App.1980). We find little social utility in placing this burden upon the manufacturers and sellers of the component parts, who did not partake in

the designing or assembling of the final product.

Thus, absent a duty of care, plaintiff's claims of negligence were properly dismissed against GM, DM, and FTE.

### III. Implied Warranties

Implied warranty liability can extend to the manufacturer of component parts. *Union Supply Co., supra.* Such liability can also extend to sellers of component parts. *See* §§ 4–2–314 and 4–2–315, C.R.S. However, the lack of fitness for ordinary purposes as well as for particular purposes must be found in the component parts before they leave the component parts manufacturers or sellers. *Union Supply Co., supra.*

Plaintiff claims that the GM cab and chassis were not safe and fit for this use and application. However, as was discussed in Part I herein, the record does not show that a defective condition existed at the time that the truck left GM and DM. The documentation presented here unrebuttably shows that the GM truck was safe and fit for ordinary use and for its particular purpose, as that particular purpose was identifiable prior to assembly by the City. Therefore, based on the record, plaintiff could not prevail on his claims of breach of implied warranties against GM and DM.

Moreover, the record shows that DM sold to the City a truck which met the specifications set forth in the City's bidding form. DM, having substantially complied with the specifications will not be held to have extended a warranty of fitness. *Klipfel v. Neill,* 30 Colo.App. 428, 494 P.2d 115 (1972); *see also Marine Colloids, Inc. v. M.D. Hardy, Inc.,* 433 A.2d 402 (Maine 1981); *Will v. Carondelet Savings & Loan Ass'n,* 508 S.W.2d 711 (Mo.App.1974).

The record also supports FTE's substantial compliance with the City's specifications. Therefore, it too cannot be held liable on implied warranties of fitness for particular or ordinary purposes. *See Klipfel v. Neill, supra; Marine Colloids, supra; Will, supra.*

### IV. Express Warranties

In their pleadings, plaintiff alleges that GM, DM, and FTE breached express warranties of safety and fitness, and other express warranties set forth in their publications. On appeal, plaintiff specifically argues that deposition testimony stating that "Chevy's business is providing the right truck for your business" represents an express warranty to which the GM truck did not conform. This language does not constitute an affirmation of fact or a promise; it is "merely the sellers' opinion or commendation of the goods." *See* § 4–2–313(2), C.R.S. Thus, no warranty was created. *Cf. Duncan v. Board of County Commissioners,* 154 Colo. 447, 391 P.2d 368 (1964).

As concerns GM and DM, the record supports the summary judgment in their favor because no factual bases can be found for plaintiff's claims.

However, as concerns FTE, taking, as we must, the allegations of plaintiff as true, we conclude that issues of fact remain as to express warranties. FTE filed only a general denial to plaintiff's complaint. It did not provide the court with any documentation to support its motion for summary judgment. FTE's general denial is inadequate to establish that no warranty of fitness may exist. Therefore, summary judgment as to FTE was improper. *See Ginter v. Palmer, supra.*

Summary judgment in favor of FTE concerning the claim of breach of express warranties is reversed and the cause is remanded for further proceedings. The judgment is affirmed in all other respects.

BERMAN and TURSI, JJ., concur.