**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

### UNITED STATES COURT OF APPEALS

### TENH CIRCUIT

---

CAMMEO RENFRO; BARB
McGRAW; DESIREE DEMPSTER,

    Plaintiffs - Appellants,

v.

CHAMPION PETFOODS USA, INC;
CHAMPION PETFOODS LP,

    Defendants - Appellees.

No. 20-1274

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:18-CV-02756-DDD-MEH)**

---

Kenneth Wexler (Robert K. Shelquist and Rebecca A. Peterson, Lockridge
Grindal Nauen P.L.L.P., Minneapolis, Minnesota, Daniel E. Gustafson and Raina
C. Borrelli, Gustafson Gluek PLLC, Minneapolis, Minnesota, Kevin A. Seely and
Steven M. McKany, Robbins LLP, San Diego, California, Joseph DePalma and
Susana Cruz Hodge, Lite Depalma Greenberg, LLC, Newark, New Jersey, and
Charles LaDuca and Katherine Van Dyck, Cuneo Gilbert & LaDuca, LLP,
Washington, D.C., with him on the briefs), Wexler Wallace LLP, Chicago,
Illinois, for Appellants.

Dominic Draye (David A. Coulson, Greenberg Traurig LLP, Miami, Florida, and
John K. Crisham, Greenberg Traurig LLP, Denver, Colorado, with him on the
brief), Greenberg Traurig LLP, Washington, DC, for Appellees.

---

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **McHUGH**, Circuit Judges.

**TYMKOVICH**, Chief Judge.

_____

A group of pet owners brought a class action against Champion Petfoods USA, Inc., alleging representations on Champion's packaging on its Acana and Orijen brands of dog food were false and misleading. Champion's dog food packaging contains a number of claims about the product, advertising the food as "Biologically Appropriate," "Trusted Everywhere," using "Fresh and Regional Ingredients," and containing "Ingredients We Love [From] People We Trust." The district court dismissed the claims as either unactionable puffery or overly subjective and therefore not materially misleading to a reasonable consumer.

We agree with the district court that Plaintiffs' claims fail to allege materially false or misleading statements on Champion's packaging because the phrases fail to deceive or mislead reasonable consumers on any material fact. We therefore **AFFIRM** the district court's grant of Champion's motion to dismiss.

## I.  Background

Champion is a pet food producer located in Auburn, Kentucky, where it manufactures pet food that is distributed throughout the United States.[1] It launched a food brand called Acana in the 1990s, and in 2006 another called Orijen. Champion's Orijen brand was aimed at offering a premium product to consumers that would mirror foods dogs might encounter in the wild. Champion

_____

[1] Champion Petfoods USA Inc. is a subsidiary of Champion Petfoods LP, a Canadian limited partnership.

marketed Orijen as "Biologically Appropriate" dog food that contained the "richness, freshness, and variety" of meats dogs were "evolved to eat." Champion later employed the same nutritional philosophy with its Acana brand as well.

The food packaging reflected this branding. For example, on Orijen bags, the packaging explained that "Biologically Appropriate" meant that the food would "nourish as nature intended."



The Orijen packaging also advertised it was "Trusted Everywhere" and contained "Fresh Regional Ingredients" "Grown Close to Home" that were "ethically raised by people we know and trust[.]"





On the packaging of certain dog food formulas, Champion made more

specific claims.  For example, on the packaging of the Orijen Six Fish formula

pictured below, Champion listed the approximate amount of each fish included by weight. Champion noted that some of the fish—such as the wild monkfish and wild Alaskan cod—were fresh or raw, while other fish included were fresh, raw, or dried. And it also noted that only eleven of the thirteen pounds in the bag were fish.



Unrelated to its packaging advertising, Champion was notified in 2018 by the Food and Drug Administration that some of the beef tallow (beef fat) it used in certain pet food formulas had been contaminated with pentobarbital, a controlled substance. But none of the dog foods purchased by Plaintiffs contained ingredients tainted with pentobarbital.

## II. Procedural History

Plaintiffs filed this class action in the District of Colorado. In the complaint, they allege seven claims based on Champion's package labeling and sale of contaminated product, including: (1) violation of the Colorado Consumer Protection Act, (2) breach of express warranty, (3) breach of implied warranty,

(4) fraudulent misrepresentation, (5) fraudulent concealment, (6) unjust enrichment, and (7) negligence.

The district court dismissed the case based on Plaintiffs' failure to allege any materially false or misleading representations or omissions of material fact. The district court acknowledged that whether a statement is false or misleading is typically a question for the jury, but when statements are "so general or devoid of specific factual content," they are incapable of empirical verification and cannot, "as a matter of law, give rise to liability." Aplt. App. at 199. First, the district court dismissed "Trusted Everywhere" and "Ingredients We Love [from] People We Trust" as "non-actionable puffery" because no rational consumer would rely on these two phrases as material statements of fact. *Id.* at 202. Next, the court found that Plaintiffs lacked standing to bring any claims under "Biologically Appropriate" because they did not allege the dog food they purchased from Champion contained any pentobarbital contamination. Because Plaintiffs had purchased all the dog food before Champion received shipments of allegedly contaminated ingredients, they suffered no harm arising from Champion's packaging. Third, the claims based on the statement about "Fresh Regional Ingredients" were dismissed as subjective claims that were not empirically verifiable. Finally, the district court dismissed Plaintiffs' claims that Champion omitted material facts, finding that the packaging was not misleading.

6

### III.  Analysis

We review dismissal under Rule 12(b)(6) for failure to state a claim de novo.  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In doing so, we accept "all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.,* 771 F.3d 697, 700 (10th Cir. 2014).  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  We "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

We first describe the legal framework under Colorado law for deciding whether an advertising statement constitutes an actionable misrepresentation under the Colorado Consumer Protection Act.  Next, we review the legal framework for claims of omission.  Then, we analyze whether each of the four statements was actionable for false or misleading misrepresentations and whether Plaintiffs had standing to bring their claims under "Biologically Appropriate." Finally, we address Plaintiffs' omission-based claims.

#### A.  Legal Framework

In a case based on federal diversity jurisdiction, the law of the forum state governs.  *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). We thus defer to the judgments of the Colorado Supreme Court and rely on

7

decisions of the state's intermediate appellate court for persuasive logic. *Long v. St. Paul Fire & Marine Ins. Co.*, 589 F.3d 1075, 1081 (10th Cir. 2009).

### 1. Affirmative Misrepresentations

The Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, et seq., "was enacted to provide prompt, economical, and readily available remedies against consumer fraud." *Crowe v. Tull*, 126 P.3d 196, 202 (Colo. 2006) (citation and internal quotation marks omitted). For a plaintiff to recover on a claim under the Colorado Consumer Protection Act, the plaintiff must prove by a preponderance of the evidence that: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business; (3) the deceptive trade practice significantly impacted the public as actual or potential consumers of the defendant's goods; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the deceptive trade practice caused actual damages or losses to the plaintiff. *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011) (citation omitted).

Section 6-1-105 of the CCPA provides a non-exhaustive list of deceptive trade practices that are actionable. *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 54 (Colo. 2001). Among the deceptive trade practices alleged by Plaintiffs are that Champion: "knowingly or recklessly ma[de] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or

8

quantities of goods [or] food[,]" Colo. Rev. Stat. § 6-1-105(e); "[r]epresent[ed] that goods [or] food . . . are of a particular standard, quality, or grade . . . [when Champion] kn[ew] or should [have] know[n] that they are of another," Colo. Rev. Stat. § 6-1-105(g); "[a]dvertis[ed] goods . . . with intent not to sell them as advertised," Colo. Rev. Stat. § 6-1-105(i); and "[f]ail[ed] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction," Colo. Rev. Stat. § 6-1-105(u); Aplt. App. at 67–68 ¶ 221.

In applying these provisions, the Colorado Supreme Court has noted that, at least with respect to Colo. Rev. Stat. § 6-1-105(e), "a deceptive trade practice" under the CCPA "requires a *false statement of fact* that either induces the recipient to act or has the capacity to deceive the recipient." *Rhino Linings USA, Inc. v. Rocky Mt. Rhino Lining, Inc.*, 62 P.3d 142, 144 (Colo. 2003) (emphasis added). In that case, the court applied its precedent in non-CCPA cases to determine that "false representation[s]," as used in the CCPA, are misrepresentations or false representations that have the capacity or tendency to deceive. *Id.* at 148.

Under Colorado law, misrepresentation is defined as a "false or misleading statement that induces the recipient to act or refrain from acting[.]" *Id.* at 147. But misrepresentation is only actionable when "it is made 'either with knowledge of its untruth, or recklessly and willfully made without regard to its

9

consequences, and with an intent to mislead and deceive the plaintiff.'" *Id.* (citing *Parks v. Bucy*, 211 P. 638, 639 (Colo. 1922)).  "Thus, a party may establish a deceptive trade practice by proof that a defendant knowingly made a misrepresentation that induces a party's action or inaction[.]" *Id.*  And in addition, the alleged "representation of a fact must be . . . material[.]"  *Parks v. Bucy*, 211 P. at 640.

But "[m]ere statements of opinion such as puffing or praise of goods by seller is no warranty." *Elliott v. Parr*, 66 P.2d 819, 821 (Colo. 1937).  Instead, the term "puffery" is used to "characterize those vague generalities that no reasonable person would rely on as assertions of particular facts." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009).  These kinds of statements cannot form the basis for any claim of misrepresentation of fact.  "[G]eneral statements of opinion typically constitute protected puffery, while specific representations of fact can form the basis of a deceptive trade practice claim." *Giles v. Inflatable Store, Inc.*, No. 07-CV-00401-PAB-KLM, 2009 WL 961469, at *3 (D. Colo. Apr. 6, 2009) (footnote omitted).  For example, in *Shaw v. Gen. Motors Corp.*, 727 P.2d 387 (Colo. App. 1986), a Colorado court concluded GM's representation that "Chevy's business is providing the right truck for your business" was not an affirmation of fact and was not actionable because it was "merely [GM]'s opinion or commendation of [its] goods."  727 P.2d at 391 (citation and internal quotation marks omitted).  Colorado courts have continued to make clear that common-law doctrines inform the meaning and application of the CCPA.

10

Similarly, in *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427 (Colo. App. 2006), the Colorado Court of Appeals applied common-law puffing doctrine in a CCPA case, concluding that the "alleged misrepresentations were mere 'puffing' and, therefore, were not actionable under the CCPA." 155 P.3d at 435. Analyzing those precedents, among others, the court "conclude[d] that the CCPA does not, as a matter of law, make actionable a statement which would otherwise be mere puffery." *Id.* In applying this law, the court held that representations that homes were of "quality construction" were mere puffery, and thus not actionable under the CCPA. *Id.* at 436.

But if sellers make any "statements of value or quality" with the "purpose of having them accepted as [a] fact," then they must be "treated as representations of fact." *Id.* at 435 (citing *Groves v. Chase*, 151 P. 913, 915 (Colo. 1915) (internal quotation marks omitted)). To be sure, sellers "'have the right to exalt the value or quality of their own property to the highest point credulity will bear,' [but] any 'statements of value or of quality may be made with the purpose of having them accepted as [a] fact,' and if so[,] should be treated as 'representations of fact.'" *Id.* at 435 (citing *Groves v. Chase*, 60 Colo. at 162).

### 2. *Omission-Based Claims*

In addition to affirmative misrepresentations, Colorado law makes actionable certain omissions of fact. In Colo. Rev. Stat. § 6-1-105(u), a "[f]ail[ure] to disclose material information concerning goods . . . which

11

information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the customer to enter into a transaction" is an actionable deceptive trade practice. Colorado law also prohibits fraudulent concealment. For a defendant to be liable for fraudulent concealment, a "plaintiff must show that the defendant had a duty to disclose material information." *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1272 (10th Cir. 2019) (citing *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998) (internal quotation marks omitted)). Whether there is a duty to disclose a fact is a question of law. *Poly Trucking, Inc. v. Concentra Health Servs., Inc.*, 93 P.3d 561, 564 (Colo. App. 2004).

In determining whether there is a duty to disclose, Colorado courts have looked to the Restatement (Second) of Torts § 551 for guidance. *In re Rumsey Land Co., LLC*, 944 F.3d at 1272. The section provides that

> [o]ne who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

Restatement (Second) of Torts § 551(1) (Am. Law. Inst. 1977); *see also Mallon Oil*, 965 P.2d at 111; *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1383 (Colo. App. 1990).

Section 551 of the Restatement and the Colorado cases interpreting it demonstrate that in the absence of a special relationship or custom requiring

12

disclosure, a party is not required to disclose material facts unless he has done something to create a false impression.

### B. Application

Applying Colorado law, we conclude none of the phrases supports claims for deceptive advertising.

> 1. *"Trusted Everywhere" and "Ingredients We Love [From] People We Trust"*

The district court correctly found that the statements "Trusted Everywhere" and "Ingredients We Love [From] People We Trust" are unactionable puffery. No reasonable consumer would have concluded these "vague generalities" were anything other than boilerplate statements of opinion.

Plaintiffs contend the district court erred in determining these statements were puffery because Plaintiffs understood them to mean Champion had a specific testing regimen and would not use certain ingredients, such as regrinds (filler that comes from already cooked dog and cat foods that failed nutritional testing). In particular, Plaintiffs took issue with Champion's failure to "consistently test its ingredients or finished [d]og [f]ood" for contamination. Aplt. Br. at 36. In support of this argument, Plaintiffs cite *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158 (D. Colo. 2015), where the court held actionable representations that a company had "zero unresolved customer

13

issues" and a "history of 100% customer satisfaction." 129 F. Supp. 3d at 1176–77 (internal quotation marks omitted).

But Plaintiffs implausibly allege these vague packaging statements to mean something they do not say. Champion does not make claims about its testing regimens on the dog food packaging. Nor does Champion say on the packaging that the dog food is free from filler. Instead, the statements about being "Trusted Everywhere" and using "Ingredients We Love [From] People We Trust" are the sort of subjective and "vague generalities that no reasonable person would rely on as assertions of particular facts." *Alpine Bank*, 555 F.3d at 1106.

Besides reading too much into the statements, Plaintiffs fail to demonstrate the claims are falsifiable and thus statements of fact. In *Chumley*, the court focused on whether the claims made were "specific, measurable claims that can be evaluated as true or false." 129 F. Supp. 3d at 1176–77. The court concluded that the questions whether *zero* customer issues remained unresolved or there was a history of *100%* customer satisfaction did not elude quantification. *Id.* at 1177. We agree that testing for falsifiability is helpful in determining whether a claim is actionable as a misrepresentation of fact or mere puffery.

Here, Plaintiffs fail to plausibly allege the claims are falsifiable. Champion did not claim its dog food was trusted by *100%* of its customers. Nor did Champion claim that everyone loves all the ingredients it uses. Instead, Champion merely made vague and unproveable claims. Consequently, we conclude these claims are protected puffery.

## 2. *"Fresh and Regional"*

The district court concluded that the statement "Fresh Regional Ingredients" was either not empirically verifiable or unactionable puffery.

The statement stands among other claims that the food was "the fullest expression of [Champion's] . . . fresh regional ingredients commitment," that "focus[ed] on local ingredients that are ethically raised by people [Champion] know[s] and trust[s]." Aplt. App. at 203. The district court found that these statements were "inherently subjective ideals" because no court or jury could decide what amount of fresh or regional ingredients "would be enough" to establish focus or commitment. *Id.* at 204.

We agree with the district court that the phrase can only be understood in the context of the entire packaging of Champion's dog food. But even if we take the claim "Fresh and Regional" on its own, it too is a "vague generality" that would not mislead a reasonable consumer who examined the entire package. Although Plaintiffs allege that the dog food contained a "material amount" of non-fresh and non-regional ingredients, they do not explain what amount of fresh ingredients a reasonable consumer would expect or why Champion's advertising claims suggested that the food was *entirely* fresh or regional. In fact, the ingredients listed on the Orijen and Acana packaging belie any understanding that the food is entirely fresh by listing non-fresh and non-regional ingredients.

In one instructive case, the Colorado Court of Appeals explained that such generic statements lack a "specific representation of fact subject to measure[.]"

15

*Park Rise*, 155 P.3d at 436.  They are typical and "obvious sales talk language" that one can expect to see on any number of food packages.  *See id.* (citation and internal quotation marks omitted).  The district court correctly concluded that claims that ingredients are "fresh" and "regional" are not subject to measurement.  No reasonable consumer would find Champion's packaging misleading merely because the ingredients contained some percentage of non-fresh or non-regional ingredients when, as here, the packaging disclosed that very fact.

> 3. *"Biologically Appropriate"*

The district court dismissed Plaintiffs' claims under the phrase "Biologically Appropriate" for lack of standing.  The district court understood Plaintiffs' claim was based on its allegation that some of the food sold in 2018 contained beef tallow contaminated with pentobarbital.  In analyzing the claim, the court found that none of the plaintiffs actually purchased any dog food that contained beef tallow as an ingredient after Champion purchased the contaminated beef tallow, and so Plaintiffs lack standing to assert a claim, citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) (plaintiffs must allege an actual imminent injury to have standing).

We agree Plaintiffs could not have suffered any consumer protection injury if they had not purchased dog food containing the objectionable ingredients.  On appeal, Plaintiffs contend the "district court erred in limiting its analysis of [the Biologically Appropriate] claim to whether Plaintiffs purchased any of the [d]og [f]ood that was confirmed to contain an ingredient with detectable levels of

pentobarbital." Aplt. Br. at 33. Instead, Plaintiffs argue "each bag of [d]og [fo]od purchased by Plaintiffs" was affected because it "ha[d] a risk of, or [did] contain, pentobarbital whe[n] it [was] advertised as Biologically Appropriate for dogs." *Id.* And at the district court, Plaintiffs argued that the dog food "contained and/or had a material risk of containing pentobarbital for years." Aplt. App. at 165. But with a close reading, it is clear that Plaintiffs' allegations that the dog food was actually contaminated with pentobarbital was limited only to dog food sold in 2018 because that is when Champion received notification it had purchased contaminated beef tallow. *Id.* at 174. Plaintiffs failed to argue that Champion sold pentobarbital-contaminated dog food *before* Champion received the contaminated 2018 batch of beef tallow, and so they failed to allege they purchased any contaminated dog food. Instead, Plaintiffs argued that the dog food they purchased before 2018 was *at risk* of contamination. But arguing that they purchased dog food that was at risk of contamination—unlike arguing that they purchased dog food that was contaminated—is insufficient for standing because an alleged injury cannot be "too speculative for Article III purposes." *Lujan*, 504 U.S. at 564 n.2.

But putting aside the pentobarbital claim, we do not agree that Plaintiffs lacked standing to bring a false advertising claim based on the "Biologically Appropriate" phrase more generally. Plaintiffs' second amended complaint

17

alleges other reasons why Champion's packaging claim that its dog food was

"Biologically Appropriate" was misleading.[2]

Even though Plaintiffs have standing to challenge this statement, no

reasonable consumer would have concluded this general statement of quality was

a material misstatement of fact. As the packaging explains, "Biologically

Appropriate" means that the dog food "mirror[s] the richness, freshness, and

variety" of a dog's natural prey, and that the dog food is "protein rich and

carbohydrate limited." Aplt. App. at 136. No reasonable consumer would

interpret this phrase to establish the inclusion of a specific amount of ingredients

or the exclusion of other ingredients. Like the other packaging statements, the

phrase is "not a specific representation of fact subject to measure or calibration."

*Park Rise*, 155 P.3d at 436. The only conclusion that a reasonable consumer

could draw from a package that claimed the dog food was "Biologically

Appropriate" is that it was fit for dogs to consume. Although Plaintiffs allege

that Champion's dog food was not fit for dog consumption, they fail to plausibly

allege what level of content of heavy metals in the dog food would render it unfit

---

[2] Plaintiffs allege in their complaint that by using the phrase "Biologically Appropriate," Champion misrepresented that the dog food contained only natural, nourishing ingredients [Aplt. App. at 27 ¶ 36]; promised specific ratios of meat and fish ingredients [Aplt. App. at 27 ¶ 37]; misled consumers because Champion "failed to prevent" exceeding levels of heavy metals than those found in fresh ingredients [Aplt. App. at 38 ¶ 70]; suggested no use of regrinds that were twice cooked and had no nutritional value [Aplt. App. at 41 ¶ 90]; and obscured the amount of fresh, regional, and "Biologically Appropriate" ingredients they used [Aplt. App. at 47 ¶ 129]. *See* Aplt. App. at 27–44.

for consumption by dogs.  And Plaintiffs do not allege that the ingredients did not approximate what a dog may find in a natural environment or that the dog food caused any actual harm to their pets.[3]  Plaintiffs' complaint thus fails to allege Champion's "Biologically Appropriate" advertising claim was false or misleading.

*    *    *

In sum, Plaintiffs have not plausibly alleged a false advertising claim based on Champion's Acana and Orijen packaging.

### C. Omission

The district court dismissed Plaintiffs' omission-based claims because it concluded the complaint contained no actionable claims.

In their complaint, Plaintiffs contended Champion omitted information about the "[r]isk of pentobarbital," "[r]isk of inclusion of regrinds with pentobarbital," "[i]nclusion of [r]egrinds," "[i]nclusion of nondisclosed non-regional ingredients," and "[i]nclusion of other non-fresh ingredients," and that

---

[3] The Plaintiffs allege that Champion's dog food contains some amount of "regrinds" and "heavy metals."  But Plaintiffs failed to allege what level of heavy metals content in a dog food formula would cause injury to dogs or render the dog food not biologically appropriate.  We therefore cannot credit Plaintiffs' argument that inclusion of some heavy metals—which are naturally occurring in certain ingredients, such as fish—renders misleading the advertising of the dog food as biologically appropriate.  And Plaintiffs fail to demonstrate how the inclusion of *some* filler makes the dog food as a whole biologically inappropriate.

such information was omitted "to induce Plaintiffs and the members of the Classes to purchase" the dog food.[4]  Aplt. App. at 77 ¶¶ 272, 273.

Plaintiffs press two omission claims on appeal: one based on the CCPA and the other on fraudulent concealment.  We find that Plaintiffs fail on their CCPA omission claim through forfeiture by failure to argue the claim at the district court.  *See Ave. Capital Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 885 (10th Cir. 2016) ("An appellant forfeits an argument by failing to preserve it in [the] district court.").  Although Plaintiffs made the claim in their complaint, Aplt. App. at 68 ¶ 221(d), they failed to press the argument in their brief opposing the motion to dismiss, Aplt. App. at 176–79.  In the omission portion of their brief opposing the motion to dismiss, Plaintiffs argued Champion "fraudulently concealed material facts," listed some of the elements for the claim, and then fleshed out the fraudulent concealment argument.  Aplt. App. at 176–79.  But Plaintiffs failed to make a separate CCPA omission claim.  At most, Plaintiffs alluded to the separate CCPA claim by arguing that they "alleged facts sufficient to support their omissions *claims*."  *Id.* at 179 (emphasis added).  But that mere allusion to a separate CCPA claim is insufficient to preserve the argument before this court. *See In re Rumsey Land Company, LLC*, 944 F.3d 1259, 1271 (10th Cir. 2019)

---

[4] As we noted previously, Plaintiffs lack standing for any claims against Champion for the inclusion of pentobarbital because they do not allege they ever purchased the contaminated dog foods.  Consequently, Plaintiffs cannot allege a claim for Champion's omission of notice that certain dog foods contained pentobarbital.

("'Fleeting references' to an argument are also insufficient [to preserve it for appeal].") (quoting *Telecomms., Inc. v. Comm'r*, 104 F.3d 1229, 1233–34 (10th Cir. 1997)).

On the fraudulent concealment claim, Plaintiffs argue Champion had a duty to disclose information about the inclusion of heavy metals, non-fresh ingredients, and regrinds. Their argument is predicated on "Champion h[olding] itself out to be a manufacturer of 'premium' and 'high quality' dog food" and touting its dog food as "Biologically Appropriate and comprised of Fresh and Regionally sourced ingredients." Aplt. Br. at 40. Plaintiffs contend the inclusion of certain ingredients makes those positive claims misleading. The problem with this argument is that it ignores that these self-promoting claims are not statements of fact because they are still puffery. Puffery is not transformed into an actionable claim because the Plaintiffs object to some of the ingredients in the dog food. Nor do Plaintiffs allege any plausible baseline to compare Champion's ingredients against some ideal.

Consequently, we conclude the district court properly dismissed the omission-based claims.

## IV. Conclusion

For these reasons, we **AFFIRM** the district court's dismissal of Plaintiffs' complaint.

21