Dissenting Opinion by
WATTS, J.,
which BATTAGLIA, J., joins.
Respectfully, I dissent. I would affirm the judgment of the Court of Special Appeals. In this case, Petitioner contends that, in a products liability case, a manufacturer may be liable for an individual’s injuries caused by a third party’s replacement parts; and Petitioner points out that other jurisdictions have held that there is a duty to warn in such circumstances.
Respondents respond that they are not liable in tort for any injury caused by exposure to asbestos from other manufacturers’ products; i.e., Respondents cannot be held liable for replacement parts or any later-added parts made and sold by others. Respondents contend that “Maryland courts[,] applying [ ] strict liability principles^] have never held a manufacturer liable for injury caused by another manufacturer’s product, even when foreseeably used with the manufacturer’s own product.” (Emphasis omitted). Stated otherwise, Respondents assert that, as the Court of Special Appeals did, this Court should reject the imposition of strict liability on a manufacturer for harm caused by another’s product. And, I agree.
I would hold that manufacturers of products cannot be held liable for failing to warn of the dangers of replacement or later-added parts that they neither manufactured nor placed into the stream of commerce. Thus, here, having undisputedly neither manufactured, marketed, sold, nor otherwise placed into the stream of commerce the replacement or later-added parts that led to Mr. May’s exposure to asbestos and subsequent injury, Respondents cannot be held liable for a failure to warn of the dangers of those asbestos-containing products. As discussed in Phipps v. Gen. Motors Corp., 278 Md. 337, 340-41, 363 A.2d 955, 957 (1976) and as set forth in Restatement (Second) of Torts § 402A (1965) — and as developed *31 through Maryland case law — strict liability is tied to a person or entity that is a seller or manufacturer of a product. Indeed, in Phipps, at no point did this Court suggest that strict liability was applicable to a person or entity outside of the stream of commerce, i.e., to a non-seller or non-manufacturer of the injury-causing product. And, Restatement (Second) of Torts § 402(A) is entitled “Special Liability of Seller of Product for Physical Harm to User or Consumer.” (Emphasis added). To be strictly liable in tort, one must be a seller or manufacturer of the product at issue, someone in the chain of distribution of the product. See, e.g., William L. Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn. L.Rev. 791, 799-800 (1966) (“What is needed is a shortcut which makes any supplier in the chain liable directly to the user.”). That a person must be a seller or manufacturer of the product that caused the injury to be strictly liable is one of the core principles of products liability, and is the starting point for any analysis of strict liability.
In Phipps, 278 Md. at 353, 363 A.2d at 963, for the first time, this Court adopted the theory of strict liability set forth in the Restatement (Second) of Torts § 402A, which states:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
*32 (Emphasis added). This Court stated that, to recover in strict liability, a plaintiff must establish that “(1) the product was in defective condition at the time that it left the possession or control of the seller, (2) [ ] it was unreasonably dangerous to the user or consumer, (3) [ ] the defect was a cause of the injuries, and (4) [ ] the product was expected to and did reach the consumer without substantial change in its condition.” Phipps, 278 Md. at 344, 363 A.2d at 958 (emphasis added). We concluded that adoption of Restatement (Second) of Torts § 402A was appropriate because “there is no reason why a party injured by a defective and unreasonably dangerous product, which!,] when placed on the market[,] is impliedly represented as safe, should bear the loss of that injury when the seller of that product is in a better position to take precautions and protect against the defect.” Id. at 352-53, 363 A.2d at 963 (emphasis added).
We noted that one of the justifications for imposing strict liability in tort on manufacturers was that “the cost of injuries caused by defective products should in equity be borne by the manufacturers that put such products on the market[.]” Id. at 343, 363 A.2d at 958 (emphasis added) (citation and internal quotation mark omitted). We found “persuasive” the “reasons for adopting strict liability [] summarized in Comment c to [Restatement (Second) of Torts § ] 402A”:
[T]he justification for [ ] strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of *33 protection at the hands of someone, and the proper persons to afford it are those who market the products.
Id. at 352, 363 A.2d at 963 (emphasis added) (internal quotation mark omitted). More recently, in Scapa Dryer Fabrics, Inc. v. Saville, 418 Md. 496, 510, 16 A.3d 159, 167 (2011), this Court quoted the following proposition of law: “Maryland courts apply traditional products liability law[,] which requires the plaintiff to prove that the defendant manufactured the product [that] allegedly caused the injury.” (Quoting Reiter v. ACandS, Inc., 179 Md.App. 645, 665, 947 A.2d 570, 582 (2008), aff'd sub nom. Reiter v. Pneumo Abex, LLC, 417 Md. 57, 8 A.3d 725 (2010)) (emphasis added).
This core principle was reaffirmed in Ford Motor Co. v. Wood, 119 Md.App. 1, 703 A.2d 1315, cert. denied, 349 Md. 494, 709 A.2d 139 (1998).[1] In Wood, 119 Md.App. at 37, 703 A.2d at 1332, absent “a demonstration of a similar degree of fault linked to the specific components that caused the plaintiffs injuries,” the Court of Special Appeals was “unwilling to hold that a vehicle manufacturer had a duty to warn of the dangers of a product that it did not manufacture, market, sell, or otherwise place into the stream of commerce.” In Wood, id. at 10-11, 703 A.2d at 1319, Mrs. Wood claimed that her husband contracted mesothelioma and died because he had been exposed to respirable asbestos fibers while working in a garage where mechanics worked on brakes and clutches on Ford vehicles. A jury found in Mrs. Wood’s favor. See id. at 11, 703 A.2d at 1319. The Court of Special Appeals held that the trial court erred in denying Ford’s motion for judgment because Mrs. Wood had failed to “present sufficient evidence that Mr. Wood was exposed to Ford’s brake and clutch products with the requisite degree of frequency, proximity[,] or regularity.” Id. at 29, 30, 703 A.2d at 1328, 1329 (emphasis in original). The Court of Special Appeals noted that “it was undisputed that the vehicles did not contain their original brake and clutch parts” when Mr. Wood worked at the garage. *34 Id. at 30, 703 A.2d at 1329. This led the Court of Special Appeals to determine that “the evidence simply was too thin to demonstrate the Mr. Wood frequently and regularly worked in proximity to mechanics applying Ford brake and clutch products.” Id. at 33, 703 A.2d at 1330.
As an alternative ground to uphold the jury’s verdict, Mrs. Wood contended that, “regardless of who manufactured the replacement parts, there was sufficient evidence from which the jury could infer that Ford had a duty to warn of the dangers involved in replacing the brakes and clutches on its vehicles.” Id. at 33, 703 A.2d at 1330. The Court of Special Appeals rejected that contention, first holding that Mrs. Wood had not tried the case on that theory and, as such, Ford had not been afforded the opportunity to defend against that theory. See id. at 33, 703 A.2d at 1330. The Court of Special Appeals also held that, even had the case been tried on such a theory, Ford would not be “liable for unreasonably dangerous replacement component parts that it neither manufactured nor placed into the stream of commerce.” Id. at 34, 703 A.2d at 1331. The Court of Special Appeals surveyed the law on the issue and noted that, “[a]s a general matter, ... courts that ha[d] considered the issue ha[d] held that a vehicle manufacturer may be held liable in damages for component parts manufactured by another only if the vehicle manufacturer incorporated the defective component into its finished product.” Id. at 34, 703 A.2d at 1331 (citations omitted). The Court of Special Appeals observed that such “assembler’s liability” was
justified because the assembler derives an economic benefit from the sale of a product that incorporates the component; the assembler has the ability to test and inspect the component when it is within its possession; and, by including the component with its finished product, the assembler represents to the consumer and ultimate user that the component is safe.
Id. at 34, 703 A.2d at 1331 (citations omitted).
Conversely, the Court of Special Appeals observed that other courts had “noted that such justifications are not ad *35 vanced by making a manufacturer liable for component parts that it did not market or place into the stream of commerce, and thus, have limited liability to those entities in the defective component’s chain of distribution.” Id. at 34-35, 703 A.2d at 1331 (citations omitted). As such, “limiting liability to those in the chain of distribution [ ] not only [was] equitable, [but also] preserve[d] a bright line in the law of strict liability!.]” Id. at 35, 703 A.2d at 1331 (citation omitted). The Court of Special Appeals quoted with approval the following explanation in favor of preserving the bright line:
[T]he need to preserve a bright line in the law of strict products liability (that is, a chain of title rule) is evident. For example, if an assembler were strictly liable for an “identical” replacement part purchased from a third party, the court would be forced to conduct an inquiry into whether the original and the replacement parts were manufactured by the same company.... If so, whether the original and replacement parts were sufficiently similar? ... If so, whether the original and replacement parts were manufactured utilizing a similar process and similar materials? If so, at what point in time did endorsement by the assembler of the component manufacturer come to an end, if ever? Each of these questions would have to be answered in order to support liability under an “endorsement” theory, notwithstanding the other justifications for strict liability.
Id. at 35, 703 A.2d at 1331 (citation omitted) (alteration and ellipses in original). Accordingly, the Court of Special Appeals declined to hold that Ford had “a duty to warn of the dangers of a product that it did not manufacture, market, sell, or otherwise place into the stream of commerce.” Id. at 37, 703 A.2d at 1332. The Court of Special Appeals further noted that, “regardless of whether Ford’s duty to warn sounds in negligence or strict liability, it has a duty to warn only by virtue of its manufacture or sale of unreasonably dangerous products.” Id. at 36 n. 7, 703 A.2d at 1331 n. 7 (emphasis added).
Wood remains persuasive, good law on this point — and, indeed, is simply a restatement of a very basic principle of *36 strict liability. I wholeheartedly agree with the Court of Special Appeals that:
Wood is dispositive of this case for the simple reason that the Mays had no evidence that any of the [Respondent]manufacturers manufactured, marketed, sold, or otherwise placed into the stream of commerce any of the asbestos-containing gaskets or packing to which Mr. May was exposed. It was undisputed that Mr. May was exposed to asbestos only because of his exposure to replacement parts that the [Respondent-]manufacturer[s] neither made nor [otherwise] placed into the stream of commerce. The circuit court, therefore, correctly directed the entry of summary judgment in favor of those [Respondents] and against the Mays.
May v. Air & Liquid Sys. Corp., 219 Md.App. 424, 432, 100 A.3d 1284, 1288 (2014) (footnote omitted). Simply put, to be strictly liable in tort one must be a seller or manufacturer of the product — original, replacement, or later-added — that caused injury. I would affirm this bedrock principle today.
Petitioner would have this Court expand strict liability to those who are neither the seller nor the manufacturer of an injury-causing product. In my view, to adopt Petitioner’s position would be to impermissibly expand strict liability in all products liability cases — not just those involving asbestos products — and blur beyond recognition the existing bright line that, to be strictly liable, the defendant must have either manufactured or sold the injury-causing product. Indeed, to adopt Petitioner’s view would lead to numerous questions and analyses that would further complicate an already complex litigation process, including inquiry as to whether the original and replacement parts are sufficiently similar, whether they are manufactured in a similar fashion with similar materials, whether the manufacturer knew of or anticipated the use of replacement parts, whether the replacement parts were integral to the product’s operation, and whether any other types of suitable replacement parts were available. This Court should not countenance such an expansive inquiry to impose *37 liability on a defendant who neither manufactured nor sold the injury-causing product.
Equally as significant, holding as Petitioner urges would overturn decades of strict liability law in Maryland established in the wake of Phipps. As a matter of public policy, a defendant who neither manufactures, sells, nor otherwise places a product into the stream of commerce generally is not in a “position to take precautions and protect against the defect.” Phipps, 278 Md. at 353, 363 A.2d at 963. Nor is such a defendant able to “stand behind” a good that it did not manufacture or sell. Id. at 352, 363 A.2d at 963 (citation omitted). In other words, the justifications supporting imposition of strict liability — or liability for negligence, for that matter, see Wood, 119 Md.App. at 36 n. 7, 703 A.2d at 1331 n. 7 — on a seller or manufacturer of an injury-causing product in a failure-to-warn case are absent where the defendant is neither the seller nor the manufacturer of the product. See, e.g., Gourdine v. Crews, 405 Md. 722, 743, 955 A.2d 769, 782 (2008) (“[NJegligence concepts and those of strict liability have ‘morphed together’ ... in failure[-]to[-]warn cases.” (Citations omitted)).
Contrary to the Majority’s analysis, in cases factually similar to the instant case, other courts have declined to hold a manufacturer liable for injury caused by another manufacturer’s replacement or later-added part. For example, in O’Neil v. Crane Co., 53 Cal.4th 335, 135 Cal.Rptr.3d 288, 266 P.3d 987, 991 (2012), the Supreme Court of California held that “a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer’s product unless the defendant’s own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined used of the products.” In O’Neil, id., Crane Co. and Warren Pumps, LLC (a Respondent in this case) “made valves and pumps used in Navy warships” and “were sued [ ] for a wrongful death allegedly caused by asbestos released from external insulation and internal gaskets and packing, all of which were made by third parties and added to the pumps and valves post[-]sale.” It *38 was “undisputed that [the] defendants never manufactured or sold any of the asbestos-containing materials to which [the] plaintiffs’ decedent was exposed.” Id. In refusing to hold that the defendants were liable, the Supreme Court of California explained:
Recognizing [the] plaintiffs’ claims would represent an unprecedented expansion of strict products liability. We decline to do so. California law has long provided that manufacturers, distributors, and retailers have a duty to ensure the safety of their products[,] and will be held strictly liable for injuries caused by a defect in their products. Yet, we have never held that these responsibilities extend to preventing injuries caused by other products that might foreseeably be used in conjunction with a defendant’s product. Nor have we held that manufacturers must warn about potential hazards in replacement parts made by others whe[re], as here, the dangerous feature of these parts was not integral to the product’s design. The broad rule [that the] plaintiffs urge would not further the purposes of strict liability. Nor would public policy be served by requiring manufacturers to warn about the dangerous propensities of products [that] they do not design, make, or sell.
Id. (emphasis in original). At the conclusion of the opinion, the Supreme Court of California reiterated that it was “reaffirm[ing] that a product manufacturer generally may not be held strictly liable for harm caused by another manufacturer’s product.” Id. 135 Cal.Rptr.3d 288, 266 P.3d at 1005.
As another example, in Braaten v. Saberhagen Holdings, 165 Wash.2d 373, 198 P.3d 493, 495 (2008), the defendants (including IMO Industries, Inc., a Respondent in this case) manufactured valves and pumps for Navy ships and, after the valves and pumps were installed, “the [N]avy applied asbestos-containing insulation to them”; the defendants had not “manufactured, sold, or otherwise supplied the asbestos insulation applied to their products.” The Supreme Court of Washington held “that the defendant-manufacturers had no duty under common law products liability principles to warn of exposure to asbestos in the thermal insulation applied to their *39 products by the [N]avy because a manufacturer generally has no duty to warn of hazards associated with another manufacturer’s products.” Id. at 503. The Supreme Court of Washington also held that there was “insufficient evidence to create a[n] issue of [material] fact with respect to whether the manufacturers had a duty to warn of the hazards of asbestos-containing packing and gaskets in or connected to their pumps and valves, and[,] as a matter of law[,] they had no duty to warn of these hazards.” Id. at 503-04. The Supreme Court of Washington stated that “the policy underpinnings for strict liability ... do not apply when a manufacturer has not placed the product in the stream of commerce.” Id. at 498 (citations omitted).
Similarly, in Simonetta v. Viad Corporation, 165 Wash.2d 341, 197 P.3d 127, 129, 138 (2008), the Supreme Court of Washington held that a manufacturer could not be held liable in strict liability or negligence for failing to warn of the dangers of asbestos exposure resulting from the application of another manufacturer’s insulation to the original manufacturer’s product (an evaporator on a Navy ship). Specifically, the Supreme Court of Washington concluded that the original manufacturer could not “be held responsible for the asbestos contained in another manufacturer’s product[,]” and because the original manufacturer “was not in the chain of distribution of the dangerous product, ... it had no duty to warn under negligence, [and could not] be strictly liable for failure to warn.” Id. at 138 (footnote omitted).[2]
*40 And, in Faddish v. Buffalo Pumps, 881 F.Supp.2d 1361, 1374 (S.D.Fla.2012), the United States District Court for the Southern District of Florida declined to impose strict liability-on the defendants, “who had no control over the type of insulation [that] the Navy would choosef,] and derived no revenue from sale of asbestos-containing products used aboard” a Navy ship; indeed, “[b]ecause [the] defendants were not in the chain of distribution of the dangerous asbestos-containing products causing injury to [the plaintiff], they [could not] be charged with a duty to warn under negligence or strict liability theory.” In so holding, the Court noted that “[t]he rationale underpinning the general rule of strict liability is that it logically and fairly places the loss caused by a defective product on those who create the risk and reap the profit by placing such a product in the stream of commerce, with the expectation that these entities have the greatest incentive and resources to control and spread the risk of harm posed by the product.” Id. at 1369.
These cases, coupled with Maryland case law and the justifications supporting the imposition of strict products liability, as this Court adopted in Phipps, 278 Md. at 352-53, 363 A.2d at 963, convince me that, here, Respondents in this case had no duty to warn of the hazards of asbestos exposure associated with replacement or later-added parts that they neither manufactured, sold, nor otherwise placed into the stream of commerce.
*41 Further advancing this conclusion is the circumstance that other courts, in cases involving non-asbestos products, have declined to impose liability for injury-causing products made by others that are outside of a manufacturer’s chain of distribution, even if those injury-causing products are used in conjunction with the manufacturer’s products. See, e.g., Dreyer v. Exel Indus., S.A., 326 Fed.Appx. 353, 354 (6th Cir.2009) (“Under Michigan law, [a] manufacturer or distributor of a paint sprayer [is not] liable for a user’s burn injuries where the solvent [that was] used to clean the sprayer ignited[.]”); In re Deep Vein Thrombosis, 356 F.Supp.2d 1055, 1062, 1068, 1069 (N.D.Cal.2005) (An airplane manufacturer that “did not design, manufacturer, install, replace^] or refurbish any [] allegedly defective seating” had no duty to warn the airlines or the passengers about the defective seats.); Sanders v. Ingram Equip., Inc., 531 So.2d 879, 879-80 (Ala.1988) (In a case involving the manufacturer of a garbage packer, which was mounted onto a truck chassis that another had manufactured and where an injured resulted from a defect in the chassis, the Supreme Court of Alabama held “that a distributor or manufacturer of a nondefective component is not liable for defects in a product that it did not manufacture, sell, or otherwise place in the stream of commerce.”) Shaw v. Gen. Motors Corp., 727 P.2d 387, 389 (Colo.App.1986) (A manufacturer of a truck cab and chassis was not strictly liable where a dump bed and hoist that third parties manufactured, sold, and installed without a back-up alarm.); Mitchell v. Sky Climber, Inc., 396 Mass. 629, 487 N.E.2d 1374, 1375, 1376 (1986) (In a case involving a manufacturer of lift motors that were used with scaffolding equipment, the Supreme Judicial Court of Massachusetts stated: “We recognize ... no duty on a manufacturer to set forth in customers’ manuals a warning of possible risk created solely by an act of another that would not be associated with a foreseeable use or misuse of the manufacturer’s own product.” (Citation omitted)); Walton v. Harnischfeger, 796 S.W.2d 225, 228 (Tex.App.1990) (The Court of Appeals of Texas held that a crane manufacturer “had no duty to warn or instruct users of its crane about rigging [that the crane *42 manufacturer] did not manufacture, incorporate into its crane, or [otherwise] place into the stream of commerce.”).
This Court’s holding in Patton v. U.S. Rugby Football, 381 Md. 627, 637, 851 A.2d 566, 571 (2004) offers zero support for the conclusion that Respondents had a duty to warn. Petitioner contends that a fact-specific analysis, utilizing the factors set forth in Patton, id. at 637, 851 A.2d at 571, is required to determine whether a duty to warn exists. Petitioner argues that several factors weigh in favor of finding that Respondents owed a duty to warn to Mr. May, including: (1) the foreseeability of harm; (2) the degree of certainty that Mr. May suffered the injury; (3) the closeness of the connection between Respondents’ conduct and Mr. May’s injury; (4) the moral blame attached to Respondents’ conduct; (5) the policy of preventing future harm; (6) the extent of the burden to Respondents and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (7) the availability, cost, and prevalence of insurance for the risk involved.
Respondents respond that there was no need to weigh the Patton factors to determine whether a duty to warn existed. Alternatively, Respondents contend that the Patton factors weigh against imposing a duty to warn on Respondents.
In Patton, 381 Md. at 630, 643, 851 A.2d at 567, 574-75, a negligence case, this Court held that a rugby player and spectator did not establish that a special relationship existed between themselves and the tournament organizers such that the tournament organizers owed them a duty of care. In Patton, id. at 630, 851 A.2d at 567, a rugby player and his father, a spectator, while at an amateur rugby tournament, were struck by lightning. The rugby player was seriously injured; the father died. See id. at 630, 851 A.2d at 567. The rugby player and his family sued the tournament organizers and others for negligence. See id. at 630, 851 A.2d at 567. This Court began its analysis by reiterating that, to make out a prima facie case in negligence, a plaintiff must prove, among other things, “that the defendant was under a duty to protect *43 the plaintiff from injury[.]” Id. at 636, 851 A.2d at 570. We observed:
In determining the existence of a duty of care, we considered, among other things:
the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant’s conduct and the injury suffered, the moral blame attached to the defendant’s conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost[,] and prevalence of insurance for the risk involved.
Id. at 637, 851 A.2d at 571 (citation omitted). We stated that, “[w]hile foreseeability is often considered among the most important of these factors, its existence alone does not suffice to establish a duty [of care.]” Id. at 637, 851 A.2d at 571 (citation and internal quotation marks omitted).
I agree with Respondents that the factors outlined in Patton are not determinative in this case and that there was, and is, no need to weigh the factors to determine whether Respondents owed Mr. May a duty to warn. Patton involved negligence, not strict products liability; as such, in Patton, we neither commented on nor added to the understanding of what is required to bring a case for strict products liability. In Patton, this Court did not state that the factors necessary to determine whether a duty of care exists in negligence extend to determining whether a manufacturer in a strict liability case has a duty to warn in connection with products that it does not manufacture, market, sell, or otherwise place into the stream of commerce.
In Patton, 381 Md. at 632, 851 A.2d at 568, the rugby player and his family brought a claim of simple negligence against tournament organizers and others based on an alleged “failure to employ proper policies and procedures to protect players and spectators at the tournament from lightning strikes.” In Patton, this Court neither addressed nor discussed products *44 liability, either strict liability failure to warn or negligent failure to warn; in short, there was no discussion in Patton regarding failure to warn in strict liability or negligent products liability cases. And if there had been such a discussion in Patton concerning failure to warn products liability, either strict liability or negligent, it would have been pure dicta with absolutely no precedential value. Thus, contrary to the Majority’s assertion, see Maj. Op. at 25-26 n. 22, 129 A.3d at 998 n. 22, Patton does not offer support in determining whether Respondents owed a duty in this case.
In Gourdine, 405 Md. at 737-38, 955 A.2d at 779, this Court considered two counts of product liability, “negligence and strict liability, [in which] Ms. Gourdine allege[d] that Lilly owed a duty to Mr. Gourdine to warn Ms. Crews about the risks of the combination of [two prescription drugs].” In Gourdine, id. at 739, 955 A.2d at 779-80, quoting Moran v. Faberge, Inc., 273 Md. 538, 552, 332 A.2d 11, 20 (1975), the Court recognized a framework for analysis in negligent failure to warn cases, stating:
Based on this negligence law we think that in the products liability domain a duty to warn is imposed on a manufacturer if the item it produces has an inherent and hidden danger about which the producer knows, or should know, could be a substantial factor in bringing injury to an individual or his property when the manufacturer’s product comes near to or in contact with the elements which are present normally in the environment where the product can reasonably be expected to be brought or used.
The Court stated that “[t]his framework substantially mirrors that of a strict liability action[.]” Gourdine, 405 Md. at 739, 955 A.2d at 780. In Gourdine, id. at 745-46, 955 A.2d at 783, although the Court later discussed one the Patton factors, namely, foreseeability, with respect to duty under the common law, the Court did not adopt the Patton factors as an analysis for negligent failure to warn.
In any event, although the factors set forth in Patton need not be examined, addressing foreseeability, a factor that Peti *45 tioner contends “weighs heavily in favor of imposing a duty on” Respondents, leads to the determination that duty in this case is not established based on a foreseeability analysis. As acknowledged in Patton, 381 Md. at 637, 851 A.2d at 571, and as the Majority acknowledges, see Maj. Op. at 12, 129 A.3d at 990, foreseeability “alone is not sufficient to establish a duty[.]” (Citation omitted). Indeed, as the Court of Special Appeals observed, “even when a person’s conduct could foreseeably result in harm to others, the Court of Appeals has repeatedly refused to recognize a duty in tort if it would expose a person to liability to ‘an indeterminate class of people.’ ” May, 219 Md.App. at 437, 100 A.3d at 1291 (citations omitted). In other words, this Court has not adopted a pure foreseeability approach to determine the existence of a duty; ie., this Court has not imposed a duty in each and every case in which an injury is foreseeable.
The foreseeability of harm caused by a replacement part— if, indeed, foreseeable — is neither dispositive of the question of whether a duty exists nor a predominant factor to be considered. See Maj. Op. at 19, 129 A.3d at 994. To adopt a pure foreseeability approach would be a slippery slope leading to limitless liability. See Wood, 119 Md.App. at 34, 703 A.2d at 1331 (The Court of Special Appeals held that Ford had no duty to warn of dangers associated with asbestos-containing replacement parts that others made or sold, even though such dangers were “associated with the foreseeable uses of its vehicles”; the Court noted that such an argument “obscure[d] the fact that [Mrs. Wood] really [was] attempting to hold Ford liable for unreasonably dangerous replacement component parts that it neither manufactured nor [otherwise] placed into the stream of commerce.”); see also Faddish, 881 F.Supp.2d at 1371 (“[A] manufacturer’s duty to warn, whether premised in negligence or strict liability theory, generally does not extend to hazards arising exclusively from other manufacturer’s products, regardless of the foreseeability of the combined use and attendant risk.” (Emphasis in original)); O’Neil, 135 Cal.Rptr.3d 288, 266 P.3d at 1004, 1005 (“California law does not impose a duty to warn about dangers arising entirely from *46 another manufacturer’s product, even if it is foreseeable that the products will be used together.... [T]he foreseeability of harm, standing alone, is not a sufficient basis for imposing strict liability on the manufacturer of a nondefective product, or one whose arguably defective product does not actually cause harm.” (Citation omitted)); Braaten, 198 P.3d at 501 (“[W]hether the manufacturers knew replacement parts would or might contain asbestos makes no difference because such knowledge does not matter[.]”).
Faced with the untenability of a pure foreseeability analysis and the general inapplicability of the Patton factors, the Majority ultimately concludes:
[T]he duty to warn in this context exists in the limited circumstances when[:] (1) a manufacturer’s product contains asbestos components, and no safer material is available; (2) asbestos is a critical part of the pump sold by the manufacturer; (3) periodic maintenance involving handling asbestos gaskets and packing is required; and (4) the manufacturer knows or should know of the risks from exposure to asbestos.
Maj. Op. at 19, 129 A.3d at 994. Put simply, this holding has no support whatsoever in Maryland case law and is simply a recitation of the circumstances of the case.
In sum, for the above reasons, I would reaffirm the longstanding and heretofore unbroken principle that manufacturers of products cannot be held liable for failing to warn of the dangers of replacement or later-added parts that they neither manufactured nor otherwise placed into the stream of commerce. In my view, in this case, having neither manufactured, marketed, sold, nor otherwise placed into the stream of commerce the replacement or later-added parts that led to Mr. May’s exposure to asbestos and subsequent injury, Respondents cannot be held liable for a failure to warn of the dangers of those asbestos-containing products.[3] Indeed, there was no *47 duty to warn where Respondents did not manufacture, sell, market, or otherwise place into the stream of commerce the parts that caused injury to Mr. May. The outcome reached by the Majority in this case stands against fundamental principles of Maryland case law. I would affirm the judgment of the Court of Special Appeals.
For the above reasons, respectfully, I dissent.
Judge BATTAGLIA has authorized me to state that she joins in this opinion.

. Wood was abrogated in part on grounds not relevant here as stated in John Crane, Inc. v. Scribner, 369 Md. 369, 396, 800 A.2d 727, 743 (2002).

. To be sure, in Macias v. Saberhagen Holdings, Inc., 175 Wash.2d 402, 282 P.3d 1069, 1076-77 (2012), the Supreme Court of Washington held that manufacturers had a duty to warn of exposure to asbestos where the "manufacturers manufactured the very products that posed the risk to [the plaintiff] of asbestos exposures” and where "[t]hey were clearly in the chain of distribution of the[] products!,]” although the "manufacturers were not in the chain of distribution of products containing asbestos when manufactured.” In summarizing its holding, the Supreme Court of Washington explained:
[T]his case comes within the general rule that a manufacturer in the chain of distribution is subject to liability for failure to warn of the hazards associated with use of its own products. Simonetta and Braaten do not control because unlike in those cases, where the *40 manufacturers’ products did not, in and of themselves, pose any inherent danger of exposure to asbestos, here when the products were used exactly as intended and cleaned for reuse exactly as intended they inherently and invariably posed the danger of exposure to asbestos.
Id. at 1077 (emphasis in original). Significantly, in Macias, id. at 1080, the Supreme Court of Washington — as the Majority acknowledges, see Maj. Op. at 27-28 n. 23, 129 A.3d at 999-1000 n. 23' — did not overrule Simonetta and Braaten, and thus those cases remain good law. See Macias, 282 P.3d at 1080 ("The chain-of-distribution requirement has long been a part of this state’s product liability law.... Simonetta and Braaten did not alter the common law principles.... In the present case, the holdings of these cases simply do not apply.”).

. I am not persuaded by the various other arguments that Petitioner raises in an attempt to assert that Respondents liable for failing to warn *47 about the dangers of replacement or later-added parts that they did not manufacture, market, sell, or otherwise place into the stream of commerce. For example, Petitioner contends that the hazard that Mr. May encountered (asbestos-containing parts) was identical to the hazard as of the time of sale because the original pumps consisted of asbestos-containing parts. It is illogical, however, to hold a defendant liable for having made or sold a product that was similar — perhaps even identical — to the product that actually caused a plaintiff harm. Maryland courts have not adopted such a theory of liability; indeed, such a theory runs counter to well-established precedent that a manufacturer can be held liable only for injury that is caused by products that the manufacturer actually manufactured, marketed, sold, or otherwise placed into the stream of commerce. As such, I would reject Petitioner's attempt to set forth another theory of strict liability. For much the same reason, I would conclude that Petitioner’s "substantial modification” argument is a red herring. Here, the Court is not confronted with an original product which was substantially modified and then caused injury. This case does not involve consideration of whether a product was substantially modified or not, but instead whether a manufacturer can be held liable for a failure to warn of dangers of another’s replacement part. For the above reasons, I would decline to extend strict liability in this fashion.