(46 P.3d 563)

No. 87,207

LOUIS C. JOHNSON, Individually and as Administrator C.T.A. of the Estate of NEVA JOHNSON, Deceased, *Appellant*, v. EDWARD F. WIEGERS and GALLOWAY, WIEGERS & HEENEY, LLP, *Appellees*.

Opinion filed May 17, 2002.

*Larry G. Michel*, of Kennedy Berkley Yarnevich & Williamson, Chartered, of Salina, for appellant.

*John D. Conderman* and *William J. Bahr*, of Arthur-Green, LLP, of Manhattan, for appellees.

Before LEWIS, P.J., PIERRON and BEIER, JJ.

BEIER, J.: Louis C. Johnson, individually and as administrator c.t.a. of the estate of Neva Johnson, appeals the district court's dismissal of his claims against lawyer Edward F. Wiegers and Galloway, Wiegers & Heeney, LLP, for negligence and breach of fiduciary duty.

Louis Johnson is the surviving spouse of Neva Johnson. Before her death, Neva owned an Individual Retirement Account (IRA) valued at $250,621.92. In the event of Neva's death, Louis had been designated the sole beneficiary of the IRA.

Neva had three adult children from a previous marriage, including Ruth Naaf. Ruth had been represented by Wiegers and his

firm on past occasions, but the firm had never represented Neva. A week before Neva's death from cancer, Ruth arranged for Wiegers to meet with Neva; as a result, Neva signed an IRA beneficiary designation form that limited Louis' interest to his lifetime, with the remainder to be divided among Neva's children. Subsequently, Ruth obtained yet another designation form from Neva that eliminated Louis entirely and made Ruth the sole beneficiary.

After Neva died, Louis filed Case No. 95-C-33, challenging Neva's competence to sign the beneficiary designation forms and arguing Ruth and Wiegers had exercised undue influence to obtain Neva's signatures. The estate was not a party to this litigation.

Ruth and Wiegers testified that Wiegers provided independent advice to Neva. The jury found that Neva was not competent to sign either of the forms and that Ruth had exercised undue influence. The jury also found that Neva did not receive independent advice from Wiegers. Louis thus regained his original status as sole beneficiary of the IRA.

Louis, both individually and as administrator, then filed this action against Wiegers and Wiegers' law firm. Louis asserted that defendants were liable for damages based on negligence, that the law firm was vicariously liable for the negligence of Wiegers, and that Wiegers had breached his fiduciary duty.

In granting defendants' motion to dismiss, the district court applied *Young v. Hecht*, 3 Kan. App. 2d 510, 597 P.2d 682, *rev. denied* 226 Kan. 793 (1979), and *Pizel v. Zuspann*, 247 Kan. 54, 795 P.2d 42, *modified* 247 Kan. 699, 803 P.2d 205 (1990), and concluded Louis had failed to demonstrate he was the intended beneficiary of the transactions. He therefore could not establish that any duty was owed to him personally, and both his claims based on negligence and breach of fiduciary duty failed as a matter of law. In addition, the district court ruled, the same claims brought by Louis in his capacity as administrator failed because the estate suffered no damages.

The district court ultimately wrote:

"Plaintiff in his individual capacity was not, during the time of the changing of the beneficiary designations, or during the time of the subsequent litigation, a client of the Defendants, but was, in fact, an adverse party. The Court further

finds that the Plaintiff in his individual capacity was clearly not the intended beneficiary in the attempted change of beneficiary transactions.

"Regarding the Estate's claims against Defendants, the Court in examining the facts alleged in the Petition notes that the Petition fails to indicate that the Estate of Neva Johnson was a party in Marshall County District Court Case No. 95 C 33. The Court can take judicial notice of its own files and confirms that the Estate of Neva Johnson was not a party in the litigation brought by Louis Johnson seeking a determination that the beneficiary forms were invalid. The Petition also notes that Neva Johnson owned an Individual Retirement Account in which Louis Johnson, and then potentially Ruth Naaf, Alice Behrens, and Boyd D. Clawson were beneficiaries. Nowhere in the Petition does it suggest that Neva Johnson's estate was a beneficiary of the IRA. Therefore, the IRA would be administered outside the Estate of Neva Johnson.

"As such, it is fair inference to conclude regarding the negligence claim that the Estate of Neva Johnson paid no attorney fees or suffered any other costs as a result of Marshall County Case No. 95 C 33. Under the authority of *Heyer v. Flaig*, cited by the Kansas Supreme Court in *Pizel v. Zuspann*, the Estate of Neva Johnson has no standing to bring this action since it suffered no loss.

"Regarding the Estate's claim against Defendants alleging breach of fiduciary duty, the Court notes that breach of fiduciary claims, as distinguished from breach of professional duty claims, are more appropriate when a professional is sued in another role, for example, as a trustee. See *Morrison v. Watkins*, 20 Kan. App. 2d 411, 421-22 (1995) (accountant sued as trustee). The Petition here only indicates that Defendant Wiegers, in his capacity as an attorney, was involved in this matter. Additionally, and as noted above, the IRA was not part of the Estate and the Estate has suffered no loss here. Thus, there is no claim for breach of fiduciary duty on behalf of the Estate."

Upon appellate review of a district court's order granting a motion to dismiss for failure to state a claim, this court must assume that the facts alleged by the plaintiff are true, along with any reasonable inferences to be drawn therefrom. *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, 634, 35 P.3d 815 (2001). We also are required to rely only on the pleadings and attached exhibits for the facts to be considered. *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 5, 20 P.3d 39 (2001).

### Attorney's Duty to Individual Third Party

Louis argues the district court erred by concluding that defendants did not owe him a duty in his individual capacity under a six-part balancing test set forth in *Pizel*. Defendants argue the court should not reach the balancing test because Louis was not an in-

tended beneficiary of the transactions. In the alternative, they argue, even if the test is applied, they did not owe Louis a duty.

To fully understand the appropriate circumstances for application of *Pizel*, we must first place it in precedential context.

We begin with a review of *Nelson v. Miller*, 227 Kan. 271, 607 P.2d 438 (1980). In *Nelson*, the Kansas Supreme Court noted the traditional rule that an attorney could be held liable for professional negligence only to his or her client. That rule, the court observed, could be relaxed when an attorney had rendered services foreseeably injurious to some third-party beneficiary of the attorney-client contract. The rule could not be relaxed, however, to permit liability to a client's adversary. See 227 Kan. at 287 (citing *Tappen v. Ager*, 599 F.2d 376 [10th Cir. 1979]). It is eminently sensible that a lawyer's duty to his or her client leaves no room for an additional— and almost certainly conflicting—duty to the client's adversary.

Enter *Pizel*, 247 Kan. 54. In that case, an attorney was sued by the potential beneficiaries of a failed inter vivos trust for legal malpractice in work done for the trust settlor. The jury found the attorney was at fault, but it also found that he did not breach his contract with the settlor and the plaintiffs were not third-party beneficiaries of the attorney-client contract.

On appeal, the Kansas Supreme Court considered whether a nonclient could recover on a claim of legal malpractice. The court first noted that "[a]llowing a nonclient to recover from an attorney for legal malpractice as a third-party beneficiary is based upon traditional contract principles." 247 Kan. at 64. Noting that the jury specifically found the plaintiffs were not third-party beneficiaries, the court then determined it also had to consider whether to allow nonclients to recover under a legal duty owed *directly* to them. To do so, it adopted a six-part balancing test first set forth in California cases, a test "closely related to the analysis and policy reasons used to justify permitting a third-party beneficiary to recover in a contract action." 247 Kan. at 64.

Relying upon *Biakanja v. Irving*, 49 Cal. 2d 647, 320 P.2d 16 (1958); *Lucas v. Hamm*, 56 Cal. 2d 583, 15 Cal. Rptr. 821, 364 P.2d 685 (1961); and *Heyer v. Flaig*, 70 Cal. 2d 223, 74 Cal. Rptr. 225, 449 P.2d 161 (1969), the court set forth the following factors

to be balanced when attorney liability to a nonclient is considered: (1) the extent to which the transaction was intended to affect the plaintiffs; (2) the foreseeability of harm to the plaintiffs; (3) the degree of certainty that the plaintiffs suffered injury; (4) the closeness of the connection between the attorney's conduct and the injury; (5) the policy of preventing future harm; and (6) the burden on the profession of the recognition of liability under the circumstances. 247 Kan. at 65-68.

This court followed *Pizel* in the next noteworthy case in this area: *Wilson-Cunningham v. Meyer,* 16 Kan. App. 2d 197, 820 P.2d 725 (1991), *rev. denied* 250 Kan. 808 (1992). In *Wilson-Cunningham,* the husband in a divorcing couple died intestate before the attorneys filed the divorce decree. As a result, the wife received her spousal share of the husband's estate. The husband's children from another marriage sued the attorneys, arguing their failure to file the decree in a timely fashion resulted in a reduction in the children's portion of the estate.

After the district court granted summary judgment in favor of the attorneys, we applied *Pizel* to determine whether the attorneys owed the children a legal duty. In discussing the first factor— whether the divorce was intended to "affect" the plaintiff children —we used the word "affect" to mean "benefit." 16 Kan. App. 2d at 202-03. To us, it was difficult to understand how a divorce could be intended to *benefit* the heirs of one of the divorcing parties. In support of this point, we cited *Haldane v. Freedman,* 204 Cal. App. 2d 475, 22 Cal. Rptr. 445 (1962), in which the children of a divorced couple attempted to sue the divorce attorneys for negligence in wasting their mother's estate and their potential inheritance. The *Haldane* court applied a test similar to that laid out in *Pizel,* concluding that the impact of the divorce on the children was not actionable. 204 Cal. App. 2d at 477-79.

In *Wilson-Cunningham,* we observed that nothing in the record supported the view that the husband intended to use his divorce as an estate planning device or that he articulated an intent that the divorce would have any *effect* on his children. In reviewing the other *Pizel* factors, we found that the harm to the children was not foreseeable, that it was not certain the children suffered injury,

that allowing the children to proceed with their action would not prevent future harm, and that the burden on the legal profession would be unreasonable because an attorney with duties to both a divorcing parent and his or her children could face a crippling conflict of interest. 16 Kan. App. 2d at 203-05.

We concluded:

"In summary, the defendants should not be found to owe a legal duty to the plaintiffs for actions taken or not taken in their father's divorce. Although a weighing of each factor in the *Pizel* multi-criteria test supports our conclusion, we believe the factor that the divorce was not intended to *affect* the plaintiffs is the most persuasive. While our reading of *Pizel* is that all six factors must be considered and none can be deemed conclusive, we believe it would be appropriate to deny liability solely on the basis that the legal representation in the divorce action was not intended to *benefit* Charles' children. Cases where attorneys have been found liable to nonclients under the multi-criteria test do seem to place greater emphasis on this factor." (Emphasis added.) 16 Kan. App. 2d at 205.

Our Supreme Court next addressed the issue of an attorney's liability to a third-party nonclient in *Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson*, 250 Kan. 490, 827 P.2d 758 (1992). In that case, a creditor bank and its debtor steel company brought a malpractice claim against the company's law firm. The district court ruled under *Nelson* that the debtor/creditor relationship between the bank and the company was adversarial and precluded recovery by the bank, but it also relied upon the *Pizel* balancing test.

On appeal, the bank argued in part that the court erred in relying on *Nelson* because there was no evidence of an adversarial relationship; the rule precluding liability to a client's adversaries should only apply to litigation adversaries, not to a party merely on the opposite side of a business deal. For its part, the law firm argued that the *Pizel* balance need not be performed because the adversarial nature of the creditor/debtor relationship ended the analysis. In its view, the nonclient should be required to make a threshold showing that one feature of the contract between the client and its lawyer was an intention to benefit the nonclient. If that threshold was unmet, the attorneys argued, the inquiry should end and no attorney liability to the nonclient should be allowed.

For reasons that are not abundantly clear, the court elected to rely on neither *Nelson* nor *Pizel*, although it recognized under *Nelson* that the relationship between a borrower and a lender usually is sufficiently adversarial so that a lawyer for one owes no duty to the other. Regarding *Pizel*, the court said only that "the geometry of the facts in the case at bar presents a different triangle," 250 Kan. at 505, and found the existence of a duty in this particular case would rise or fall on whether the law firm intended the bank to rely upon the legal services performed.

In our later decision in *Jack v. City of Wichita*, 23 Kan. App. 2d 606, 933 P.2d 787 (1997), we renewed our focus on the original intention of the defendant and client regarding third parties.

In that case, the plaintiffs were homeowners who brought suit against the company who platted their land for failing to recognize the homes would lie in a flood hazard zone. The district court granted the defendant's motion for judgment on the pleadings on the ground that the company owed no duty to the plaintiffs. On appeal, we affirmed, distinguishing *Pizel* because the plaintiffs could not demonstrate they were intended to be beneficiaries of the defendant's work. 23 Kan. App. 2d at 609.

This review of the precedents demonstrates that *Pizel* is far from the only game in town for determining the existence of an attorney's duty to a third-party nonclient affected by the attorney's work. We harmonize the holdings of the various cases from the Supreme Court and our court to the best of our ability and hold that a three-step analysis is required: First, if the client of the attorney and the third party are adversaries, no duty arises under *Nelson*. Second, if the attorney and client never intended for the attorney's work to benefit the third party, then no duty arises under *Bank IV Wichita* and *Jack*. Third, if it is possible to conclude that the attorney and client intended for the attorney's work to benefit the third party, then the reviewing court must strike the *Pizel* balance to determine whether a duty arose in the particular circumstances at hand. See *Pizel*, 247 Kan. at 67-68; *Wilson-Cunningham*, 16 Kan. App. 2d at 201-202. In doing so, the court should read the word "affect" in the first element of the *Pizel* balance to mean "benefit."

In this case, we do not need to proceed beyond the first step to determine that the dismissal of plaintiff's suit was appropriate.

The relationship between Louis on the one hand and Ruth on the other was adversarial. Although the jury found that Wiegers did not provide any independent legal advice to Neva, he certainly was acting as an attorney for Ruth; it was Ruth's clear purpose to affect Louis negatively, not positively. She obtained the assistance of Wiegers and his firm in that endeavor and succeeded in persuading her mother to change the IRA beneficiary designation not once but twice to Louis' detriment. As *Nelson* instructed us long ago, Wiegers' and his firm's duty to advise and assist Ruth in her quest for status as the sole beneficiary of the IRA left no room for a duty to preserve Louis' interest in the account.

### Claims Brought on Behalf of the Estate

Louis next argues the district court erroneously dismissed his claims brought in his capacity as administrator for Neva's estate. The estate suffered damages, he argues, because it incurred additional expenses by being held open during the pendency of Case No. 95-C-33 and because punitive damages might have been possible. Louis also contends defendants owed a duty to the estate because they owed a duty to Neva as their purported client.

The arguments regarding damages have no merit. Thus we need not reach the argument regarding defendants' duty to the estate.

The district court was correct in concluding that there could be no damages to the estate. After the death of the account holder, the contents of an IRA pass to the designated beneficiaries outside of the decedent's estate. There was no need to hold the estate open pending the outcome of Case No. 95-C-33, and no punitive damages could possibly have flowed through it. See Kansas Estate Administration Handbook §1.11 (6th ed. 1999 Supp.).

Affirmed.