NOT DESIGNATED FOR PUBLICATION

No. 114,123

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MATTHIAS SCHROEDER,
*Appellant*,

v.

DANA BREWER,
*Appellee*.

MEMORANDUM OPINION

Appeal from Mitchell District Court; JEROME P. HELLMER, judge. Opinion filed February 17, 2017. Affirmed.

*Caleb Boone*, of Hayes, for appellant.

*J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee.

Before POWELL, P.J., PIERRON and HILL, JJ.

*Per Curiam*:  For reasons more fully explained in the opinion, we affirm the district court's grant of summary judgment to Dana Brewer, the attorney and administrator for the estate of Carrie Schroeder because the parties had reached a settlement agreement. Under the facts of this case, we hold that there was no attorney-client relationship between Brewer and Matthias Schroeder, and that Brewer owed no special duty to Matthias because Matthias had sued the Estate and was clearly an adversary.

1

*The court appointed Brewer as the administrator and attorney for Carrie Schroeder's estate.*

After his father died, Matthias and his sister, Lillian Schroeder, conveyed their interests in the family farm south of Tipton to their mother, Carrie Schroeder. Later, in exchange for Lillian's agreement to take care of Carrie for the rest of her life, Carrie deeded the entire parcel to Lillian. Matthias objected and filed a lawsuit against Carrie and Lillian for more than $700,000.

While the lawsuit was pending, Carrie died and her estate was substituted as a party. The court had appointed Dana Brewer as administrator and attorney for Carrie's estate.

Over Matthias' objection, the court preliminarily approved Brewer's request for 6 percent total fees (3 percent as administrator plus 3 percent as attorney). Brewer also requested a fee of $150 per hour for his services as the estate's attorney for his time spent on the litigation between Matthias, Lillian, and the Estate.

After the hearing where Brewer had been appointed by the court, Matthias and Brewer met in the jury room of the courthouse. Matthias contends that during that meeting, Brewer agreed to perform all legal services for the Estate for 3 percent. Brewer denies this.

Through mediation, the parties roughed-out a settlement agreement. The terms were straightforward. Lillian would deed the Tipton farm to the Estate in exchange for $285,000, and Matthias would receive the remainder of the Estate, including the Tipton farm. The parties informed the court of their agreement.

*The parties continue to negotiate a settlement.*

The judge asked Brewer to draft the settlement agreement. Brewer e-mailed a draft settlement agreement to Matthias' lawyer, Terry Criss. The draft did not contain a provision relating to Brewer's fee. Matthias acknowledged that the proposed agreement was consistent with the agreement reached at mediation. In the e-mail, Brewer noted he had offered to lower his total fee to 4 1/2 percent, and waive litigation fees, including preparing income tax returns, but that Matthias was balking at the offer.

Ken Cole, Lillian's lawyer, sent an e-mail to Criss and Brewer, questioning responsibility for back taxes on the real estate and title insurance premiums. The back taxes and title insurance premiums were not discussed in mediation. Matthias and Lillian disputed who was responsible for these payments. Criss sent the other parties a revised proposed settlement agreement, noting that he was trying to get Matthias to agree to it. Brewer's fees were not addressed in the revised proposed agreement. Matthias objected to Criss' draft because it did not address Brewer's fees. Matthias talked to Criss, not Brewer, about Brewer's fees during this time.

After that, Brewer sent an e-mail to Criss and Cole, reporting that the main "hang-ups" to settlement were the payment of real estate taxes and title insurance premiums. Brewer also suggested that if Criss and Matthias were available to talk at the same time, they might be able to reach an accommodation on Brewer's fees. A few days later, Brewer sent Criss an e-mail offering to lower his total fees to 4 1/2 percent. Brewer noted that if not resolved by agreement, he was confident the court would allow the full 6 percent plus additional time related to litigation. Brewer did not remember receiving a response to this offer. Matthias would not authorize Criss to make a counteroffer.

Eventually, Matthias asked the court to remove Brewer as administrator of the Estate. The court denied his motion, and the parties once again talked about settlement.

3

Finally, Brewer agreed to accept a total fee of 3 percent for his services as attorney and administrator of the Estate, and for his representation of the Estate defending against Matthias' civil suit. In early September 2011, Criss sent Brewer and Cole a proposed settlement agreement including the agreement concerning Brewer's fees. Criss noted that the real estate taxes were not agreed upon yet. By the end of the month, Lillian and Matthias reached an agreement concerning the payment of real estate taxes.

Matthias signed the settlement agreement. It provided that Brewer would receive a total fee of 3 percent, not to exceed $17,000. The agreement also provided that upon completion of all obligations under the agreement, none of the parties would have any further claim against each other relating to the Estate or Matthias' civil case against Carrie and Lillian.

The Tipton property was sold at auction for $342,000. The property had been previously appraised for $320,000. In due course, the court approved the settlement agreement and sale of the real estate.

Matthias asked the court to alter or amend its order approving the settlement agreement. He contended that the parties did not intend to make an agreement which would preclude his claim against Brewer for violating his duties as administrator, for legal malpractice, or for breach of contract. Matthias had tried to sell the Tipton farm in February or March 2011 to Randy and Dovie Schamp. The Schamps were never able to secure financing and the deal fell through. After a hearing, the court denied the motion.

*Matthias sues Brewer.*

Matthias filed this action against Brewer making various claims, including breach of contract, negligence, fraud, intentional misrepresentation, breach of fiduciary duty, and negligent misrepresentation. Matthias claimed that Brewer agreed to charge only 3

4

percent for his services as administrator of the Estate, but he failed to abide by this agreement. As a result, the settlement agreement was not finalized until several weeks later. Because of this delay, Matthias was unable to complete the sale of real estate from the Estate and was damaged in the amount of $160,000, plus other consequential damages. He claimed Brewer was acting as his attorney (because Matthias was an heir) with respect to the promise he had made to Matthias in the jury room at the courthouse.

Brewer denied that he agreed to accept a lesser fee until later as part of the global settlement agreement. Brewer denied he had an attorney-client relationship with Matthias and denied any claims of misrepresentation.

This matter was decided on motions for summary judgment. The court granted summary judgment in Brewer's favor. The court made various findings of fact and conclusions of law:

"1.     Plaintiff is precluded from pursuing any claim against defendant by the Settlement Agreement dated October 27, 2010 and is collaterally estopped by the Probate Court's approval of the Settlement Agreement from attacking the settlement.

"2.     The Probate Court had preliminary approved a six percent fee for Mr. Brewer with three percent for services as administrator and three percent for services as attorney. The Court imposed no duty on Mr. Brewer to be attorney for any family member. Mr. Schroeder appeared at that hearing *pro se*, and presented objections to Mr. Brewer's appointment and fee which were rejected by the Court. Mr. Schroeder was later represented by Terry Criss during the negotiations for settlement. Although Mr. Schroeder believed there was a three percent fee agreement, the drafts of the settlement documents give no indication of such a discussion. Mr. Schroeder could not have reasonably relied on any fee discussion because Mr. Brewer was attorney for the estate, not Mr. Schroeder, and Mr. Schroeder's objections to Mr. Brewer's fees had already been rejected by the Court. There was no detrimental reliance by Mr. Schroeder.

5

"3.     Plaintiff's claim that a contract was breached by delay by Mr. Schroeder is not supported. In a short time after the mediation, Mr. Brewer sent a draft of the settlement agreement to Mr. Schroeder's attorney, Terry Criss. Mr. Brewer had no attorney-client relationship with Mr. Schroeder but acted on behalf of his client, the Estate of Carrie Schroeder. Mr. Schroeder was not damaged by any delay by Mr. Brewer in submitting the settlement agreement. No agreement to reduce the fee approved by the Court was supported by any consideration. The fee is set by the Court. Even if an agreement had been made to accept a reduced fee, the obligation would be to the Estate of Carrie Schroeder, not Mr. Schroeder.

"4.     The record does not support any misrepresentation of Mr. Brewer as to what he would do for the estate. Mr. Brewer owed no duty to Mr. Schroeder. Mr. Brewer's responsibilities were to the estate and there was no attorney/client relationship between Mr. Schroeder and Mr. Brewer. Mr. Schroeder's objections to fees were rejected. Ultimately through a series of negotiations, that matter was settled and resolved.

"5.     The claim of fraud requires evidence Mr. Brewer . . . entered an agreement with no intention at that time to perform the agreement. Mr. Brewer testified there was no agreement on the fee issue. Regardless, a subsequent agreement was reached which provided the parties with a resolution of all claims which was approved by the probate court. There is nothing in the record to support fraud by Mr. Brewer.

"6.     Mr. Schroeder contends that a discussion with Mr. Brewer regarding an attorney's fee established an attorney-client relationship with him. Plaintiff cannot support this theory when the Court appointed Mr. Brewer to represent the Estate and Mr. Schroeder was an adversary of Mr. Brewer's client, the Estate. Joint representation of Mr. Schroeder and the Estate would be a conflict of interest. Nothing in the record supports Mr. Schroeder's contention that Mr. Brewer agreed to be his attorney. Any discussion on the amount of fees was only a discussion between an heir of the Estate and the attorney for the Estate and creates no attorney-client relationship. Although Mr. Schroeder objected to the amount of fees, there was no attorney-client relationship entered by Mr. Brewer with Mr. Schroeder.

"7.     The Supreme Court decision in *Winkelman v. Allen County*, 214 Kan. 22 (1974) establishes the standard for proof of the existence of a ready, willing and able buyer. The case relied upon by plaintiff, *Premier Realty L.L.C. v. I.T.J.*

6

*Investments, Inc.*, 42 Kan.App.2d 148 (2009) is distinguishable. In *Premier Realty*, the defendant knew the potential buyer and stipulated that the potential buyer was a ready, willing and able buyer, which is not the case here. The issue in *Premier Realty* involved whether the realtor had an exclusive listing and a right to a realtor's fee. The issue whether the relator produced a buyer within the terms of the listing agreement with the capacity to purchase is far different from the evidence in this case. Mr. Schroeder relies upon a speculative arrangement that required a trust be established, funded and the trustee agree to fund purchase of the property at a price well over its appraised value. There is no evidence cited by plaintiff that establishes that a buyer was available with committed funding anytime during the time frame the offer from Mr. Schamp was open."

*The settlement agreement controls all issues in this case.*

Matthias contends that Brewer, as an attorney, was not a party to the settlement agreement. In his view, the agreement was intended to resolve the contentious litigation between Matthias, Lillian, and the Estate, and not intended to absolve Brewer from liability. He also argues that an attorney is not permitted to absolve himself from liability to a client from acts of legal malpractice or negligence in a settlement agreement.

It is fundamental that appellate courts exercise unlimited review over the interpretation and legal effect of written instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

Regarding settlement agreements, courts look at what is really compromised in the agreements:

"The law favors compromise and settlement. A compromise and settlement generally bars pre-existing claims directly tied to the settled dispute. Despite this, a compromise only settles the issues the parties intended to settle. A compromise agreement must be construed in light of its language and the circumstances surrounding

7

its making. More importantly, however, construction of a compromise agreement involves ascertaining and then giving effect to the mutual intentions of its makers. [Citations omitted.]" *In re Estate of Engels*, 10 Kan. App. 2d 103, 106, 692 P.2d 400 (1984) (Internal citations omitted).

Here, the settlement agreement was made by Matthias and Lillian, as Carrie's heirs, and Brewer, as administrator of Carrie's estate. The agreement provided, "Brewer agrees to accept as his fee for administration of the Estate of Carrie L. Schroeder, *including participation in Case No. 09 CV 45*, an amount equal to 3% of the value of the estate, not to exceed $17,000.00." (Emphasis added.) It further provided no further claims would be pursued:

> "Finally, the parties agree that upon the performance and completion in full of all their covenants and promises under this Agreement, *none of the parties will have any further claims against each other related to either court case* or the ownership of any of the property involved with either case, nor responsibility for the payment of any of the indebtedness of Carrie or her estate, other than as set out in this Agreement." (Emphasis added.)

Brewer's signature line read, "Dana Brewer, Administrator."

The language of the agreement makes it clear that the agreement was intended to settle Brewer's total fee for acting as administrator and attorney for the Estate. Matthias' insistence on including language regarding Brewer's fees in the settlement agreement does not make sense if the agreement did not settle Brewer's total fees. Furthermore, the only valid interpretation of this agreement means that Brewer was a party to the agreement.

8

The question that remains is whether the settlement agreement precludes Matthias' claim against Brewer for initially breaking his promise to reduce his fees to 3 percent and thereby delaying the settlement negotiations.

The district court concluded that Matthias was precluded from pursuing any claim against Brewer by the settlement agreement. Matthias argues that he did not intend to release Brewer from liability through the settlement agreement.

In *Engels*, the court found that a settlement reached in a will contest included a settlement about attorney fees based on a number of factors. The court found that the agreement at issue was clearly intended to settle the will contest, and the attorney fees were directly tied to that contest. "In the absence of language to the contrary, it must be presumed the parties intended to settle the entire dispute." 10 Kan. App. 2d at 107. That agreement specifically reserved two questions for future determination, but not the attorney fee issue. And the entitlement to fees would depend in large part on the same evidence that would have been required in the will contest that was settled. 10 Kan. App. 2d at 107.

Here, the language at issue reads, "none of the parties will have any further claims against each other related to *either court case* or the ownership of any of the property involved *with either case*, nor responsibility for the payment of any of the indebtedness of Carrie or her estate." (Emphasis added.) "Ownership of any of the property" and "payment of the indebtedness" obviously refers to the disputes between Matthias, Lillian, and the Estate. But the phrase, "any further claims against each other related to either court case" must include Matthias' claim against Brewer. There is no language in the agreement that would lead to a more narrow interpretation. Brewer's claimed fees were directly tied to both court cases.

Brewer was entitled to 6 percent of the Estate according to the district court. Brewer agreed to take less—3 percent—as a compromise. The release of all claims does not specify claims against Brewer. The reasonable interpretation is that any claim relating to the negotiation of Brewer's fees was settled. It would not be reasonable to settle one's fee and then be sued based on the amount of the time that it took to settle that fee.

Matthias also cites Kansas Rules of Professional Conduct Rule 1.8 (2017 Kan. S. Ct. R. 307) and Rule 1.9 (2017 Kan. S. Ct. R. 313) as support for his argument. Those rules have no application here. The rules prohibit an attorney from absolving himself or herself from liability to a current or former client for malpractice. But Matthias was represented by Terry Criss during the negotiation of this settlement agreement. Brewer was never Matthias' attorney. Brewer's client was the Estate.

Going further, Matthias cites *Wynne v. Lindauer*, No. 05-01-01814-CV, 2002 WL 1608224, at *2-3 (Tex. App. 2002) (unpublished opinion). In *Wynne*, the court found that a legal malpractice claim was not a dispute contemplated by the parties when signing a release. As a result, according to Texas law, to release such a claim, the claim must be specifically mentioned in the release. The release in that case only named a general class of claims. Therefore, it did not release the malpractice claim. The court also found the attorneys were not parties to the agreement. 2002 WL 1608224, at *2-3.

Here, in contrast, Brewer was a party to the settlement agreement. Moreover, Texas law is not binding on this court.

We find no error in the district court granting summary judgment to Brewer on the basis of a binding settlement agreement.

*There was no attorney-client relationship between Matthias and Brewer.*

Despite Matthias' argument to the contrary, there was no attorney-client relationship in this case between Matthias and Brewer. The district court was correct in this matter. Matthias contends that he and Brewer formed an attorney-client relationship for the limited purpose of Brewer's promise to reduce his total fee to 3 percent. Matthias is wrong.

An attorney-client relationship can only be created by a contract of employment, express or implied. *Young v. Hecht*, 3 Kan. App. 2d 510, 514, 597 P.2d 682 (1979). An implied attorney-client relationship begins when the client seeks and receives legal advice from an attorney. *State v. Drach*, 268 Kan. 636, 644-45, 1 P.3d 864 (2000).

> """The authority of an attorney begins with his retainer; but the relation of attorney and client is not dependent on the payment of a fee, nor is a formal contract necessary to create this relationship. The contract may be implied from conduct of the parties. The employment is sufficiently established when it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his profession."' [Citation omitted] (quoting 7 Am. Jur. 2d, Attorneys at Law § 118)." *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 266 Kan. 1047, 1053, 975 P.2d 231 (1999).

Matthias relies on Dennis Davidson's expert testimony, an expert witness hired by Matthias. But Davidson actually testified that an attorney representing an estate is not an attorney for the beneficiaries. The estate's attorney cannot be an advocate for a beneficiary against the estate. Davidson did believe that the estate attorney's duty to abide by an agreement about his fee extends to the beneficiaries because the beneficiaries ultimately receive the assets of the estate.

Attorney fees in estate cases are supervised by the court. Here, the court correctly focused on the adversarial relationship of the two:

11

"Mr. Schroeder contends that a discussion with Mr. Brewer regarding an attorney's fee established an attorney-client relationship with him. Plaintiff cannot support this theory when the Court appointed Mr. Brewer to represent the Estate and Mr. Schroeder was an adversary of Mr. Brewer's client, the Estate. Joint representation of Mr. Schroeder and the Estate would be a conflict of interest. Nothing in the record supports Mr. Schroeder's contention that Mr. Brewer agreed to be his attorney. Any discussion on the amount of fee was only a discussion between an heir of the Estate and the attorney for the Estate and creates no attorney-client relationship. Although Mr. Schroeder objected to the amount of fees, there was no attorney-client relationship entered by Mr. Brewer with Mr. Schroeder."

We find the record supports the district court's remarks.

*Brewer owed no special duty to Matthias, who was an heir.*

Matthias contends he was the real party in interest to enforce Brewer's promise to reduce his total fee to 3 percent because he was the beneficiary of the Estate. He argues that the prospect of a settlement with Lillian was known and that Brewer owed him a duty not to violate their fee limitation agreement.

As support, Matthias cites *Pizel v. Zuspann*, 247 Kan. 54, Syl. ¶¶ 4-5, 795 P.2d 42 (1990), *modified by Pizel v. Zuspann,* 247 Kan. 699, 803 P.2d 205 (1990). *Pizel* provides that beneficiaries of a trust may have an action against the attorney who drafted the trust agreement or represented the settlor, depending on a number of factors. 274 Kan. 54, Syl. ¶¶ 4-5.

The traditional rule is that an attorney was only liable for negligence to the attorney's client. The rationale was that there could be no action against an attorney for professional negligence in the absence of privity of contract between the plaintiff and

12

attorney. The privity requirement has been relaxed where an attorney has rendered services which the attorney should recognize as involving a foreseeable injury to a third-party beneficiary, such as in will drafting. But an attorney cannot be held liable to a client's adversary. An attorney has no duty to a client's adversary. *Nelson v. Miller*, 227 Kan. 271, 286-89, 607 P.2d 438 (1980).

A three-step analysis governs the determination of whether an attorney has a duty to a nonclient third party:

> "First, if the client of the attorney and the third party are adversaries, no duty arises. Second, if the attorney and the client never intended for the attorney's work to benefit the third party, then no duty arises. Third, if it is possible to conclude that the attorney and client intended for the attorney's work to benefit the third party, then the reviewing court must apply a balancing of factors identified in *Pizel* . . . to determine whether a duty arose in the particular circumstances at hand." *Johnson v. Wiegers*, 30 Kan. App. 2d 672, Syl., 46 P.3d 563 (2002).

The *Pizel* factors are:

- The extent to which the transaction was intended to benefit the plaintiffs;
- the foreseeability of harm to the plaintiffs;
- the degree of certainty that the plaintiffs suffered injury;
- the closeness of the connection between the attorney's conduct and the injury;
- the policy of preventing future harm; and
- the burden on the profession of the recognition of liability under the circumstances. 247 Kan. at 67-68.

It is fundamental that estate proceedings are clearly adversarial. *In re Estate of Pritchard*, 37 Kan. App. 2d 260, 275, 154 P.3d 24 (2007). An administrator's obligation

13

is to act in the best interests of the estate; there is no specific obligation to any one particular heir. *In re Estate of Pritchard*, 37 Kan. App. 2d at 276. Thus, other courts have held that it would be dangerous to conclude that an attorney for an estate subjects himself or herself to claims of negligence from the beneficiaries. The beneficiaries have conflicting interests and are not owed a duty directly by the estate's attorney. See *Goldberg v. Frye*, 217 Cal. App. 3d 1258, 1269, 266 Cal. Rptr. 483 (1990).

The actions of these parties establishes their relative responsibilities. Here, Matthias was not merely an heir—he was suing the estate for over $700,000. This means Matthias was an adversary to the Estate. Only the Estate was Brewer's client.

Matthias acted in his own interests at the expense of the other beneficiary— Lillian. Matthias spoke to Randy Schamp in secret about purchasing the Tipton farm because he did not want Lillian to get any benefit from the property being sold at a price above its appraised value. Under these circumstances, it is clearly inappropriate for Brewer to owe Matthias some duty at the expense of Lillian. Thus, it is not necessary to go any further than step 1 in *Johnson* to determine that no duty arose. See *Johnson*, 30 Kan. App. 2d 672, Syl.

Even if we proceed to step 3 in our *Johnson* analysis and consider the *Pizel* factors, Brewer owed no duty to Matthias. The beneficiaries to the Estate would ultimately benefit by Brewer's promise to hold his fees to 3 percent. But it was not foreseeable that a delay in finalizing the settlement agreement would have caused Randy Schamp to withdraw his offer to buy the Tipton farm.

Matthias did not tell anyone about Randy's offer. The injury was not certain nor closely related to Brewer's alleged promise to hold his fees to 3 percent. It was highly speculative that the property would have sold at a price well above the appraised value. Brewer owed no duty to Matthias. The district court was correct on this point as well.

Affirmed.