**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

WENDY HILLS,

    Plaintiff - Appellant,

and

BRENT HILLS,

    Plaintiff,

v.

GERARD ARENSDORF,

    Defendant - Appellee.

No. 21-3118
(D.C. No. 5:20-CV-04037-TC-JPO &
5:20-CV-04074-TC-JPO)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HOLMES**, **MORITZ**, and **CARSON**, Circuit Judges.

_____

Wendy Hills brought state-law claims against Gerard Arensdorf, an accountant

who allegedly performed unauthorized legal services for her father in the days before

his death. The district court dismissed those claims under Federal Rule of Civil

Procedure 12(b)(6), and Wendy[1] appeals. For the reasons below, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1] To avoid confusion, we refer to Wendy and other members of the Hills
family by their first names.

**Background**

We begin by setting out the events that gave rise to Wendy's lawsuit, described in the light most favorable to Wendy based on the well-pleaded factual allegations in her operative complaint.[2] *See Renfro v. Champion Petfoods USA, Inc*, 25 F.4th 1293, 1300 (10th Cir. 2022). The dispute centers on assets owned by Wendy's father, Douglas Hills, who died intestate (without a will) in July 2018. Twelve days before his death, Douglas signed a one-page document assigning his interest in a farming business—valued at about $10 million—to his wife Junelle Hills, in her capacity as a trustee of a previously unfunded trust that he created in 1986. Junelle is also a beneficiary of the trust, as are Wendy and Brent Hills, Douglas's two children from a prior marriage.

Wendy asserts that Junelle unduly influenced Douglas into assigning the farm assets to the trust. The assignment was drafted by Arensdorf, Douglas's longtime accountant who is not an attorney, while Douglas was recovering from a heart attack and shortly after he had received a terminal cancer diagnosis. According to the complaint, Douglas never asked Arensdorf to draft the assignment; Arensdorf did so at Junelle's request and "relied on [her] representations about what [Douglas] wanted." App. vol. 1, 113–14. Nor did Douglas understand, the complaint alleges,

---

[2] In describing the facts, we also rely (as the district court did) on information in key documents referenced in the complaint because they are central to the complaint and neither party disputes their authenticity. *See Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 709 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 2779 (2022).

that the assignment would effectively "reverse [his] longstanding estate plan[]" by allowing Junelle to receive trust distributions from a farm business that he had "intentionally kept separate from her throughout their marriage." *Id.* at 115. The complaint also alleges that had Douglas not executed the assignment, a prenuptial agreement would have prevented Junelle from receiving the farm assets. Instead, those assets would have passed to Wendy and Brent alone (as Douglas allegedly intended) through intestate succession.

After Douglas died, Wendy filed lawsuits in state and federal court challenging the assignment's validity.[3] She named Junelle as a defendant in those cases, but not Arensdorf. The lawsuits eventually settled, and the parties agreed that (1) the assignment was "void ab initio, unenforceable, and transferred none of the [f]arming [i]nterest[] to the [t]rust"; (2) Wendy and Brent would receive sole control of Douglas's interest in the farming business; and (3) in exchange for a release of claims, Junelle would receive payments totaling $1.35 million from Douglas's estate. *Id.* at 235.

Around the same time as the settlement, Wendy filed this lawsuit against Arensdorf in federal court.[4] She alleged that by preparing the assignment and presenting it to Douglas, Arensdorf committed legal malpractice and engaged in the unauthorized practice of law under the Kansas Consumer Protection Act (KCPA),

---

[3] In the state-court lawsuit, Wendy also sued on behalf of Douglas's estate.

[4] Brent also sued Arensdorf, and the district court consolidated his case with Wendy's. Only Wendy's appeal is before us, however, because Brent did not appeal the district court's decision.

Kan. Stat. Ann. § 50-6,142. The district court determined that Wendy did not adequately plead either claim and dismissed the complaint. *See* Fed. R. Civ. P. 12(b)(6). Wendy appeals.

## Analysis

Our review is de novo when, as here, a plaintiff appeals an order dismissing a complaint under Rule 12(b)(6) for failure to state a claim. *Renfro*, 25 F.4th at 1300. To avoid a Rule 12(b)(6) dismissal, the complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Here, Wendy argues that the district court improperly dismissed her complaint against Arensdorf because she stated facially plausible claims under Kansas law for legal malpractice and unauthorized practice of law. *See id.* at 1301 (explaining that forum state's law applies in diversity-jurisdiction case). We address those claims in turn below.

## I.    Legal Malpractice

Wendy first argues that the district court improperly dismissed her legal-malpractice claim. To state such a claim, Wendy must allege that (1) Arensdorf owed her "the duty of the attorney to exercise ordinary skill and knowledge"; (2) he breached that duty; (3) she suffered "actual loss or damage"; and (4) his breach was the cause of that injury. *Canaan v. Bartee*, 72 P.3d 911, 914 (Kan. 2003) (quoting *Bergstrom v. Noah*, 974 P.2d 531, 553 (Kan. 1999)). The district court concluded that Wendy inadequately pleaded the first element because Arensdorf owed no duty to

4

Wendy, who was not his client.[5]

As Arensdorf points out, Kansas follows the general rule, rooted in privity of contract, that an attorney only owes a duty to—and thus may only be sued for malpractice by—his or her client. *See Pizel v. Zuspann*, 795 P.2d 42, 48 (Kan.), *modified on denial of reh'g*, 803 P.2d 205 (Kan. 1990). Under a straightforward application of this rule, Wendy's claim would fail because the complaint alleges that Douglas, not Wendy, was Arensdorf's client. Nevertheless, to avoid dismissal, Wendy invokes a line of cases recognizing malpractice liability "when an attorney renders services that the attorney should have recognized as involving a foreseeable injury to a third-party beneficiary of the [attorney-client] contract." *Id.* In other words, Wendy contends that Arensdorf owed her a duty of care, even though she was not his client, because she was a third-party beneficiary of the legal services he performed for Douglas.

The district court assessed Wendy's third-party-beneficiary theory under the framework set out in *Johnson v. Wiegers*, 46 P.3d 563, 568 (Kan. Ct. App. 2002). As relevant here, *Johnson* reiterated a principle derived from several Kansas appellate cases that an attorney owes no duty to a third-party nonclient, and thus cannot be liable for malpractice, "if the attorney and client never intended for the attorney's

---

[5] In reaching this conclusion, the district court assumed without deciding that Kansas recognizes a cause of action for legal malpractice against a nonlawyer like Arensdorf. We resolve this appeal under the same assumption because, although the issue is not mentioned in the briefs, the parties confirmed at oral argument that they also assumed such a claim exists under Kansas law.

5

work to benefit the third party." 46 P.3d at 568. Applying that principle, the district court concluded that Wendy could not show that Arensdorf's work (drafting the assignment and submitting it to Douglas) was intended to benefit her. She could not do so, the district court explained, because "[t]he assignment transferred Douglas's property in a way that diluted, if not entirely eliminated, [her] potential interest in the property." App. vol. 2, 306.

In response, Wendy argues that the district court overlooked material evidence when rejecting her claim under *Johnson*. Specifically, she says that it erroneously treated the assignment as the sole evidence of Douglas's intent, ignoring extrinsic evidence about Douglas's long-held desire and oral promises to pass the farm assets solely to his children. According to Wendy, the district court was free to consider such evidence because the complaint plausibly alleges that Junelle unduly influenced Douglas into signing the assignment. *See Cresto v. Cresto*, 358 P.3d 831, 834–35 (Kan. 2015) (allowing party "contesting a testamentary document" on undue-influence grounds to offer evidence of "'suspicious circumstances surrounding the making of the [testamentary document]'" (alteration in original) (quoting *In re Est. of Farr*, 49 P.3d 415, 430 (Kan. 2002))). And if considered, Wendy says, the extrinsic evidence shows that "Douglas intended to benefit her . . . with the farming interests." Aplt. Br. 20.

Wendy's extrinsic-evidence argument falls short. At best, the extrinsic evidence referenced in the complaint suggests that *before* executing the assignment, Douglas intended to pass the farm assets to his children rather than Junelle. But

6

Douglas's pre-assignment intent says nothing about the dispositive issue on which Arensdorf's liability turns—whether Douglas "intended for [*Arensdorf's*] *work* to benefit [Wendy]." *Johnson*, 46 P.3d at 568 (emphasis added). And on that score, Wendy points to no evidence, extrinsic or otherwise, suggesting that she was an intended beneficiary of Arensdorf's work. To the contrary, her complaint alleges just the opposite: that Arensdorf's work harmed her because the assignment he prepared transferred the farm assets to a trust controlled by Junelle, meaning she and Brent would no longer receive and control those assets outright. So even assuming Douglas previously wanted to benefit Wendy by passing his interest in the farming business to her, she does not allege (as she must) that Douglas intended to benefit her through Arensdorf's legal work.

Wendy's assertion that Junelle unduly influenced Douglas into executing the assignment only reinforces our conclusion that Wendy fails to establish her intended-beneficiary status as to Arensdorf's work. The premise behind Wendy's undue-influence allegation, as the complaint reveals, is that Douglas "never instructed [Arensdorf] to prepare the assignment"; Arensdorf prepared it *at Junelle's* request, and Junelle persuaded Douglas to sign it "under highly suspicious circumstances." App. vol. 1, 113. This argument is self-defeating. Simply put, if Douglas did not want Arensdorf's work performed in the first place, he hardly could have intended Wendy to benefit from that work. Thus, Wendy's undue-influence allegation does not save her malpractice claim.

Because Wendy fails to allege that Douglas and Arensdorf "intended for

7

[Arensdorf's] work to benefit [her]," Arensdorf owed her no duty as a third-party nonclient.[6] *Johnson*, 46 P.3d at 568. Wendy therefore cannot establish the first element of her legal-malpractice claim, and the district court properly dismissed it.

## II.     Unauthorized Practice of Law

Next, Wendy challenges the dismissal of her claim that Arensdorf violated the KCPA by engaging in the unauthorized practice of law. *See* Kan. Stat. Ann. § 50-6,142. In particular, she disputes the district court's view that she could not bring such a claim because she was not "aggrieved" by Arensdorf's purported violation of the statute. Kan. Stat. Ann. § 50-6,142(c)(3); *see also* Kan. Stat. Ann. § 50-634(b). A person is aggrieved for KCPA purposes only if (1) the defendant's violation "adversely affected the [person's] legal rights"; and (2) there is "a causal connection between the [violation] and the claimed injury." *Schneider v. Liberty Asset Mgmt.*, 251 P.3d 666, 671 (Kan. Ct. App. 2011). Although the district court found both requirements lacking here, we need only discuss the former to dispose of Wendy's appeal.

As to the adverse-effect requirement, the district court determined that Wendy "had no enforceable rights in the property that the [a]ssignment [could have]

---

[6] Based on this conclusion, we need not reach the district court's determination that Wendy's malpractice claim also fails because she and Douglas were adversaries and because Arensdorf owed her no duty under a multi-factor balancing test. *See Johnson*, 46 P.3d at 568. Wendy's failure to show that Douglas intended Arensdorf's legal work to benefit her is sufficient, by itself, to affirm the district court's ruling. *See Wilson-Cunningham v. Meyer*, 820 P.2d 725, 730 (Kan. Ct. App. 1991) ("[I]t would be appropriate to deny liability solely on the basis that the legal representation . . . was not intended to benefit [the nonclients].").

harmed." App. vol. 2, 308; *see also Finstad v. Washburn Univ. of Topeka*, 845 P.2d 685, 691 (Kan. 1993) (clarifying that aggrievement refers "only to those who have rights which may be enforced at law and whose pecuniary interest may be affected" (quoting *Fairfax Drainage Dist. v. Kansas City*, 374 P.2d 35, 41 (Kan. 1962))). The district court based its conclusion on the fact that Douglas had no will or other document granting Wendy "any enforceable rights in or title to" his interest in the farming business. App. vol. 2, 304. Even so, Wendy responds that she had "legal inheritance rights" to Douglas's interest under Kansas's intestate-succession laws. Aplt. Br. 23. That is, she says Arensdorf's unauthorized legal practice adversely affected her right to "inherit[] property she would have [otherwise] inherited." *Id.*

But no such right exists under Kansas law. In Kansas, an heir who expects to inherit property from a parent has no legally enforceable rights in such property until the parent's death. *See* Kan. Stat. Ann. § 59-502 (establishing that intestate decedent's property passes "at the time of death"); *McKay's Est. v. Davis*, 491 P.2d 932, 934 (Kan. 1971) ("[T]here were no heirs of or vested rights in the estate . . . until [the decedent's] death."). So Wendy's expectations about how Douglas would distribute the farm assets did not give her any "legal rights" that Arensdorf's purported KCPA violation could have adversely affected.[7] *Schneider*, 251 P.3d at

---

[7] For this reason, it makes no difference whether, as Wendy contends, "a plaintiff may bring a KCPA claim even though the defendant's misconduct does not produce injury immediately at the time of the conduct." Aplt. Br. 25–26. Even if that is true, the plaintiff must nevertheless possess some enforceable right that can be injured by the defendant's violation. *See Finstad*, 845 P.2d at 691. And as explained

671; *see also Finstad*, 845 P.2d at 691 (noting that aggrievement "does not refer to persons who may happen to entertain desires on the subject, but only to those who have rights which may be enforced at law and whose pecuniary interest may be affected" (quoting *Fairfax*, 374 P.2d at 41)).

Wendy's argument fares no better if, as Wendy suggests, we reframe her asserted right as the "right to be free from undue-influence-caused injury." Rep. Br. 15. To state the obvious, the complaint nowhere alleges that Wendy herself experienced undue influence. Rather, it alleges that Junelle unduly influenced *Douglas* into executing the assignment. Wendy supplies no authority recognizing her right not to have her father's intestate estate plans altered through undue influence.[8] No matter how those plans changed—whether voluntarily or through undue influence—Wendy had no enforceable rights to Douglas's intestate property.

In short, Wendy is not aggrieved under the KCPA because she lacked enforceable legal rights in the farm assets that Arensdorf's allegedly unauthorized legal work could have adversely affected. As a result, the district court did not err in dismissing her KCPA claim.

## Conclusion

Wendy inadequately pleaded material elements of her legal-malpractice and

---

above, Wendy never had a right to inherit the farm assets; she merely expected to receive them when Douglas died.

[8] The closest Wendy gets to providing such authority is *Cresto*, 358 P.3d 831. But *Cresto* is distinguishable—there, the plaintiffs intervened in probate proceedings to challenge a *will* that replaced an earlier, written estate plan benefiting them. *See id.* at 835, 838.

KCPA claims. Accordingly, the district court properly dismissed her complaint for failure to state a claim.[9]


Entered for the Court


Nancy L. Moritz
Circuit Judge

---

[9] Because we affirm based on Wendy's failure to state prima facie elements of her claims, we do not reach Arensdorf's alternative arguments asking us to affirm based on affirmative defenses raised below but not considered by the district court.